John Joseph CONNORS, Jr., Petitioner,

v.

Claire Louise Adkins CONNORS, Respondent.

Supreme Court of Tennessee.

Feb. 18, 1980.

Freeman C. Marr, Bartlett, for petitioner.

David E. Caywood, Memphis, for respondent.

## OPINION

FONES, Justice.

The single issue in this case is whether a fee of $20,000 awarded by the trial court to be paid by husband for the services of wife's attorney was reasonable.

A three page complaint for divorce was filed September 3, 1976, containing the vital statistics required by statute and alleging that husband was guilty of cruel and inhuman treatment, without particulars. In response to husband's motion, a bill of particulars was filed containing six one sentence paragraphs, alleging that husband was constantly in the company of and having affairs with other women. After husband filed an answer and cross-bill a three page answer was filed on behalf of wife.

The case was set for trial in the fall of 1977 but was continued apparently by mutual consent. On the next trial date, March 8, 1978, the parties and their witnesses went to the courthouse prepared for a contested case. While waiting for the trial to begin, husband and wife, out of the presence of their lawyers, reached a property settlement agreement except for attorney's fees. At the hearing wife presented proof sufficient to obtain an uncontested divorce and approval of the property settlement.

In substance, the property settlement incorporated into the decree was as follows:

(1) Wife to receive monthly alimony at rate of $25,000 per annum, to terminate on the remarriage or death of wife or the death of husband.

(2) Husband's interest as tenant by the entirety in home vested in wife, and all furniture and fixtures therein acknowledged to be property of wife.

(3) Husband agreed to pay for and keep in force a $200,000 life insurance policy on his life with wife as irrevocable beneficiary and owner.

(4) Husband agreed to pay the remaining installments on the automobile wife "was driving."

(5) If the parties should be unable to agree upon attorney's fees for wife's attorney that matter would be submitted to the court for determination.

The parties were unable to agree, and a hearing was held on June 8, 1978, to determine a reasonable attorney's fee for the services of wife's attorney. Husband's attorney insisted at the hearing that the question of who should pay the fee was likewise an issue.

A transcript of that hearing was included in the record submitted to the appellate courts.

The hearing disclosed these facts.

The total time devoted to representation of Mrs. Connors was one hundred hours, "give or take five hours." Included in the one hundred hours was four full days immediately preceding the trial date, March 8, 1978.

Husband voluntarily supported wife while the litigation was pending so that it was not necessary to negotiate or litigate alimony pendente lite. Husband paid a five hundred dollar attorney's fee pendente lite, the sum asked by wife's attorney.

Wife's attorney took the pre-trial deposition of husband on two occasions. Those depositions are not in the record but were described as of not more than one hour duration each, and the questioning was limited to husband's financial circumstances. None of the facts wife intended to rely upon for divorce were developed in the depositions because wife's attorney stated he had the assurance of both husband and his lawyer that husband would answer truthfully at the trial and he wanted to avoid matters that would be acrimonious.

Husband owned eighty percent of the stock of Southern Warehouses, Inc., a merchandise warehouse specializing in the storage of grocery products for the accounts of manufacturers until directed to deliver them to wholesale grocers. The remaining twenty percent of the stock was held by key employees, and apparently husband was the chief executive officer of the corporation. His actual salary was a matter of dispute, and a substantial portion of the one hundred and eight page transcript deals with

the ability of the husband to pay a substantial attorney's fee. His W–2 form reflected that the corporation paid him wages and other compensation in 1977 of $121,779 and that $35,558.50 was withheld for federal income taxes. Husband testified that he owed the corporation $107,864 for loans made to him over the years; that he was repaying the corporation monthly and that the net sum he received per month as salary was $4,081, or an annual take-home pay of $48,972. However, it was shown that he filed a personal financial statement with Union Planters National Bank dated January 26, 1977, that did not list his debt to the corporation as a liability. That statement listed his salary as $75,000 per annum. The total net worth of the corporation as of March 31, 1978, was $238,511.58. Husband had no significant assets other than eighty percent of the stock in Southern Warehouses, Inc. The total value of the equity in the home, one-half of which was awarded to wife by the settlement, was $26,100. Wife's attorney testified that he had been practicing law sixteen years, had an A–V rating in Martindale Hubbell and was experienced in the handling of divorce cases.

The affidavits of two Memphis lawyers to the effect that they had "read the affidavit of David E. Caywood, the memorandum in support thereof describing the services rendered . . .", in the Connors' case, were filed in the cause prior to the hearing. One of the lawyers expressed the opinion that a fee of $25,000 was reasonable and the other that a fee of $20,000 to $25,000 was reasonable.

The affidavit of Caywood, read by the lawyers and also filed in the record, extracts the list of assets and liabilities of Mr. Connors from the January 26, 1977, personal financial statement submitted to the Union Planters National Bank showing a net worth of $394,000. Husband's stock in Southern Warehouses, Inc. was valued at $350,000, but the affidavit failed to show that the financial statement also reflected that the book value of that stock was $187,000 or that the real estate shown as having an equity of $45,000 was the home awarded to Mrs. Connors in the divorce decree.

Caywood's affidavit asserts that in attempting to ascertain the reasonable value of wife's right to future payments, wife has a life expectancy of twenty-four years, and the present value of her future right to receive $25,000 per year alimony, discounted at the rate of five percent, is $345,250. The affidavit emphasizes that the alimony payments were backed up by a "fully paid for $200,000 life insurance policy with wife as the irrevocable owner and beneficiary of the policy, the premiums being paid by Mr. Connors." The policy was not made an exhibit but the proof at the hearing developed that it was a term policy.

All of the Tennessee case law relied upon by wife's attorney in his memorandum of authorities, which is referred to as having been read by the two attorneys making affidavits, cites a line of cases said to establish that a sum equal to ten percent or more of the value of the alimony recovered by the wife is a proper attorney's fee for her attorney. The memorandum indulges the assumption that the instant case is governed by the same rule with this observation:

"First it should be observed that here unlike many situations concerning the fixing of attorney's fees, there exists a definite arithmetical standard."

The central theme of wife's attorney's advocacy in support of a requested fee of $25,000 was that a true *in solido* award for wife was impractical because substantially all of his net worth consisted of the stock in a closely held corporation from which his substantial annual salary was derived; that the $25,000 per annum alimony was thus in lieu of an *in solido* award, and a fortiori, the present value of those payments over the period of her life expectancy provided a proper figure for application of the "ten percent or more rule."

In this Court, wife's attorney takes issue with the Court of Appeals' opinion in *Ligon v. Ligon*, 556 S.W.2d 763 (Tenn.App.1977), wherein Judge Todd writing for the Court said:

"Contrary to widespread belief and the arguments in brief, there is no rule in Tennessee that the attorney who represents a wife in securing a divorce is entitled to recover from the husband a fee equal to 10 per cent of the amount of alimony granted to the wife." *Id.* at 768.

No further discussion of the ten percent rule was undertaken in that opinion.

Wife's attorney insists the cases are "legion" in this State upholding the "ten percent or more" rule and cites and discusses most of them, beginning with *Riley v. Riley*, 9 Tenn.App. 643 (1929).

It is appropriate that we put an end to any further doubt about the status of the "ten percent or more" rule.

The first case to articulate a ten percent rule in divorce cases was *Riley*. Judge Owen, writing for the western section of the Court of Appeals said:

"An attorney's fee, amounting to ten percent (10%) or more of the value of the alimony recovered for a wife in the successfully [sic] prosecution of a divorce suit, is a proper fee to be allowed and paid to her attorney. *Winslow v. Winslow*, 133 Tenn. 663, 182 S.W. 241; *McBee v. McBee*, 1 Heisk. 558; *Bailey v. Bailey*, 6 Tenn.App. 272." *Id.* at 644.

*McBee*, the earliest case relied upon for that pronouncement, did indeed involve an award of two thousand dollars alimony and a two hundred dollar attorney's fee. Those amounts were reported by the clerk and master as proper, following a reference to him, and were approved by the Chancellor. A tract of land belonging to defendant's husband was ordered sold by the master. The principal objections on appeal were that the cash and credit terms of the sale and the sale without the equity of redemption were inappropriate. The only comment by the Supreme Court on the allowance of attorney's fees was that "the record discloses much irregularity and disregard of the rules of Chancery proceedings, in the ascertainment of a reasonable amount to be allowed for alimony, and as compensation to complainant's solicitor" but that neither was unreasonable. *McBee v. McBee*, 48 Tenn. 558, 561 (1870).

In *Bailey*, husband was the original complainant and wife filed a cross-bill seeking a divorce, alimony, and attorney's fees. A consent decree was entered prior to the trial of the case approving the agreement of the parties to $1,500 alimony and $200 attorney's fees for wife's attorney. No question was thereafter raised about either alimony or attorney's fees. The Court of Appeals' opinion is completely devoid of comment on the propriety of the alimony or attorney's fees.

Although *Winslow* has apparently been assigned the status of the leading case in support of the ten percent rule of *Riley*, the opinion contains no reference whatever to such a rule. The wife's grounds for divorce were abandonment, cruel and inhuman treatment, and adultery. The trial court granted her a decree on abandonment, finding the other grounds not sustained by the evidence. This Court noted that an immense amount of proof was taken; that the parties "exhibited a singular lack of delicacy, and have revealed and elaborated the most intimate details of their domestic relations." *Winslow v. Winslow*, 133 Tenn. 663, 665, 182 S.W. 241, 242 (1915). The Court declined to disclose those details in its opinion with the observation that they had been discussed in an oral opinion. The Court concluded with the comment that the greater blame attached to the husband.

In addition, the opinion reveals that a reference was had to the master to determine the net value of husband's estate; that the master reported $166,517.68; and that the chancellor found it to be $178,765.28. The trial court decreed monthly alimony, and wife's appeal insisted that the allowance was too small and should have been *in solido*. Defendant also appealed complaining that both alimony and attorney's fees were excessive. The Supreme Court held that it was a proper case for an award of alimony *in solido* and that wife was entitled to $50,000 out of husband's estate, which the Court treated as, "around $170,000." *Id.* Without any comment whatever as to the factors by which a rea-

sonable attorney's fee should be determined, the Court approved the trial court's allowance of $5,000. Obviously, wife's attorney in *Winslow* was required to and did litigate extensively and the ultimate award to the wife obtained in the Supreme Court was the result of his professional efforts and skill.

The most that can be said for the three cases relied upon in *Riley* is that they gave arithmetical support for a ten percent rule. The fact that an appropriate fee is sometimes equivalent to ten percent of the alimony awarded and is thereafter approved by the appellate courts provides no rational basis for the *Riley* pronouncement. Beyond that, the rule's origin was simply the *ipse dixit* of Judge Owen and his colleagues. The reasons for the inappropriateness of such a rule are many. In the few instances where a percentage formula is appropriately used to determine attorney's fees, such as estates and collections, the percentage varies inversely with the amount involved. The application of a percentage formula in divorce cases has a tendency to completely supersede the more appropriate factors that have achieved time honored recognition by this Court. Further, and finally, the recovery obtained by the wife is included in the appropriate factor, "the amount involved and the results obtained."

■ We see no reason to discuss later cases that have cited *Riley* and *Winslow*, such as *Crouch v. Crouch*, 53 Tenn.App. 594, 385 S.W.2d 288 (1964); *Raskind v. Raskind*, 45 Tenn.App. 583, 325 S.W.2d 617 (1959); and *Troutt v. Troutt*, 35 Tenn.App. 617, 250 S.W.2d 372 (1952). Suffice it to say those cases have offered no reason other than the *Riley* pronouncement for applying the rule, and we expressly disapprove of the use of a ten percent or more formula in awarding attorney's fees in divorce cases.

The Court of Appeals, in affirming the action of the trial court, noted that the fee awarded was supported by the affidavits of two experienced attorneys and that there was "no countervailing testimony from any source as to what might be considered a reasonable fee." As observed above, the affidavits show on their face that they were based only upon the affidavit and memorandum of authorities of wife's attorney. Those two documents were prepared for an adversary proceeding and understandably present advocacy on behalf of a $25,000 fee, omitting a number of facts and factors that were developed at the hearing in mitigation of the advocacy position of wife's attorney. In these circumstances, we must assume that the two lawyers were unaware of any facts beyond those contained in the two documents referred to, which, of course, diminishes the weight to be given their opinions. In addition, we reject the implication in the Court of Appeals' opinion that the absence of "countervailing" testimony or affidavits in any wise obligates the trial court to accept such opinion evidence or diminishes its responsibility to exercise its own judgment and ascertain what sum is a reasonable fee, determined by application of all relevant factors. *See Carmack v. Fidelity-Bankers Trust Co.*, 180 Tenn. 581, 582, 177 S.W.2d 351, 355 (1944).

■ The appropriate factors to be used as guides in fixing a reasonable attorney's fee have been phrased in various terms over the years, but may be summarized as follows:

1. The time devoted to performing the legal service.

2. The time limitations imposed by the circumstances.

3. The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

4. The fee customarily charged in the locality for similar legal services.

5. The amount involved and the results obtained.

6. The experience, reputation, and ability of the lawyer performing the legal service.

*See Folk v. Folk*, 210 Tenn. 367, 379, 357 S.W.2d 828, 829 (1962). These are substantially the guidelines listed in Supreme Court Rule 38, Code of Professional Responsibility, D.R. 2–106. The additional factors list-

ed in Rule 38 should be given consideration when relevant.

■ In this case it appears to us quite likely that too much consideration was given to the so-called "present value" of wife's right to receive $25,000 alimony annually over her life expectancy and the alleged net worth and annual salary of husband, $394,900 and $121,799 respectively. Those figures were mentioned by the Court of Appeals as supportive of the fee awarded. If the $25,000 annual periodic award is to be likened to an *in solido* award of $345,250, for the purposes of wife's attorney's fee then she should be required to pay approximately half of the fee. *See Ligon v. Ligon, supra.* Also, that annual payment is subject to two other contingencies, wife's remarriage and husband's death. Guideline number five involves, in a divorce action, a look at husband's net worth and salary after wife's recovery is carved out, to properly assess the amount involved and the results obtained. The appropriate resulting factor is what the wife recovered, not what the husband had left. His remaining net worth and salary are only relevant insofar as they may require that the wife pay some part of the fee. In short, when appropriate consideration is given to the amount involved and the results obtained, it is inappropriate and redundant to increase the fee by a consideration of the husband's remaining net worth or salary. Parenthetically, we agree with the learned trial judge that, in the circumstances of this case, the husband should pay the entire attorney's fee.

■ We adhere to the long established rule of *Holston National Bank v. Wood*, 125 Tenn. 6, 140 S.W. 31 (1911), that this Court will not interfere with the allowance of attorney's fees by the trial court unless we can see that some injustice has been perpetrated. However, this Court is not bound either by the expert opinion of lawyers as to the value of professional services or the action of the lower courts when in our judgment the fees allowed are excessive or inequitable. *See Carmack v. Fidelity-Bankers Trust Co., supra,* and *Fiedler v. Potter,* 180 Tenn. 176, 189, 172 S.W.2d 1007, 1012

(1943). Our review of this fully developed record of the services rendered, applying the guidelines listed herein leads us to the definite and firm conviction that the fee awarded is excessive and that it should be reduced to the sum of $12,500. The trial court decreed payment of its award in three equal annual payments. We see no need for that, and the fee of $12,500 shall constitute a judgment, payable according to law.

The judgment of the Court of Appeals is reversed and this cause is remanded to the Circuit Court of Shelby County, Tennessee for the entry and enforcement of a decree in accord with this opinion. Costs are adjudged one-half against husband, one-half against wife.

BROCK, C. J., and COOPER, HENRY and HARBISON, JJ., concur.