NUTRITIONAL SUPPORT SERVICES, LTD., a Tennessee Limited Partnership, Plaintiff–Appellee,

v.

Dudley W. TAYLOR, Commissioner of Revenue, State of Tennessee, Defendant–Appellant.

Supreme Court of Tennessee, at Nashville.

Jan. 14, 1991.

Charles W. Burson, Atty. Gen. and Reporter, William P. Sizer, Asst. Atty. Gen., Nashville, for defendant-appellant.

James T. O'Hare, O'Hare, Sherrard & Roe, Nashville, for plaintiff-appellee.

## OPINION

FONES, Justice.

The Commissioner of Revenue issued a delinquent sales tax assessment against plaintiff taxpayer in the sum of $740,463, plus interest of $129,565. Taxpayer filed suit challenging the assessment, pursuant to T.C.A. § 67-1-1801, et seq., the case was tried and a judgment entered declaring the assessment invalid. The Commissioner did not appeal from that decision and thereafter upon application of taxpayer for attorney's fees pursuant to T.C.A. § 67-1-1803(d) the trial court awarded $50,000.00. The Commissioner appeals from the award asserting that the amount is excessive.

T.C.A. § 67-1-1803(d) reads as follows:
"(d) The Court shall award to the prevailing party attorney's fees and expenses of litigation up to twenty percent (20%) of the amount assessed or denied including interest after payment."

Taxpayer sells medical devices and nutrients in Tennessee for use in enteral and parental nutritional therapy. The medical devices that it sells for enteral nutritional therapy consists of pumps, bags and tubes used to introduce nutritional formulas into patients with non-functioning ingestion systems. The parental devices consist of tubes and catheters used to inject nutritional fluids directly into the blood stream of patients with non-functioning digestion systems.

Taxpayer relied upon the exemption of prosthetics, etc., and other similar medical corrective or support devices, as provided in T.C.A. § 67-6-314(5) and the exemption in T.C.A. § 67-6-320(a) of drugs prescribed by licensed practitioners of the healing arts.

The date of the Commissioner's assessment was 28 December, 1987. Taxpayer employed Mr. O'Hare's law firm in late February, 1988. As the result of a conference, the Commissioner advised taxpayers that it would delete the portion of the assessment involving the sales tax on the fluids and formulas used in connection with the feeding systems, on the basis of the exemption of prescription drugs, but continued to deny the claim that the "prosthetics" exemption applied to the feeding device systems. However, the assessment had not been reduced when taxpayer filed suit on 25 March 1988. If taxpayer had not filed suit prior to 28 March 1988 payment of the tax would not have been stayed. Because the assessment had not been formally reduced, taxpayer was required to grant a lien upon its accounts receivable equal to 150% of the December assessments.

The case was tried on 23 May 1989 and judgment was entered on 12 September 1989. The parties did not file a transcript of the evidence presented on the validity of the tax assessment, or of the hearing on the issue of attorney's fees. The Judgment Order entered on 12 September 1989 provided that taxpayer "may submit a detailed statement of attorney's fees and expenses of litigation incurred in this case, including a billing statement showing the actual hours expended by counsel, no later than forty-five (45) days after entry of this order unless this order is appealed."

Taxpayer filed a motion to award attorney's fees supported by a four page affidavit of James T. O'Hare and a fifth page listing the expenses incurred, totaling $6,632.01. The Commissioner filed a six page "Memorandum of Law" in opposition to taxpayer's motion on 1 November 1989 and taxpayer filed a two page response on 2 November. The hearing was held on 3 November and the trial judge entered judgment on 16 November awarding taxpayer an attorney's fee of $50,000 and $6,632.01 expenses.

The major thrust of the Commissioner's opposition to the fee, in the trial court, was that fees awarded against governmental entities be based entirely upon the "lodestar" approach, to-wit, the prevailing hourly rate in the community for attorneys of similar experience multiplied by the number of hours reasonably expended on the litigation. Three federal civil rights cases are cited in support of that statement, *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and *Northcross v. Board of Education*, 611 F.2d 624 (6th Cir.1979). Those cases do not support counsel's statement that, "the *law requires* awards of fees against governmental entities be based on the 'lodestar' approach." See e.g., *Blum v. Stenson, supra,* and *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974). In *Blum*, a non-profit legal service organization had sought, and had been awarded by all lower courts, a fee of 150% of the "lodestar" calculation submitted by the proponent of the fee. The respondent opposing the fee insisted that "any upward adjustment on that fee [lodestar] is improper." The Court rejected that contention as being contrary to the legislative history, citing Senate Report No. 94–1011, p. 6 (1976), U.S.Code Cong. & Admin. News 1976, pp. 5908, 5913 and n. 13, which reads as follows:

> Specifically, the Senate report expressly approved the 12 factors that the Court of Appeals for the Fifth Circuit had used in calculating a fee award in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (1974). It then identified three cases as having "correctly applied" those 12 factors.

*Id.* 104 S.Ct. at 1548, n. 13.

In this Court, the Commissioner has abandoned the "lodestar" contention, at least by that name. He acknowledges that the appropriate factors to be used in determining a reasonable attorney's fee in Tennessee are set forth in *Connors v. Connors,* 594 S.W.2d 672 (Tenn.1980) and DR 2–106 of the Code of Professional Responsibility. However, his major thrust continues to be that the fee *must* in all circumstances be limited to a reasonable hourly rate times a reasonable number of hours. In addition he argues that the hourly rates of the two lawyers and a law clerk are excessive and that merely stating the total number of hours each devoted to the case was inadequate, that, "a detailed explanation of how these hours were expended" should have been provided in the trial court; that without such a breakdown this Court cannot evaluate whether the hours were excessive; that the failure to provide a detailed breakdown of hours requires a remand to the trial court, or a significant reduction of the fee. The Commissioner cites two other reasons for a remand: that the hourly rates in Mr. O'Hare's affidavit are in excess of the prevailing rate in Nashville, and any hours taxpayer's lawyers spent at the *administrative level* cannot be determined and such hours cannot be claimed as the fee is limited to *litigation.*

Mr. O'Hare's motion and affidavit were filed two weeks before the hearing in the trial court. The Commissioner's memorandum raised the issue of taxpayer's lawyer's failure to provide a detailed breakdown of the work performed during the hours claimed and also alleged that the rates stated in Mr. O'Hare's affidavit were higher than the prevailing rates in Nashville. We do not know what happened at the hearing on 3 November 1989, but the Commissioner does not assert that he sought to cross-examine Mr. O'Hare and was refused, or that he sought to introduce proof of the prevailing rates in Nashville and such tender was refused.

In *Wilson Management v. Star Distributors,* 745 S.W.2d 870 (Tenn.1988), we addressed conflicts between two Court of Appeals cases, with respect to procedure in the trial court in the determination of a reasonable attorney's fee, based upon contractual agreements. It is elementary that the same procedure would apply to the determination of a reasonable attorney fee based upon a state statute.

Plaintiff-lessor sued the lessee for rent and a reasonable attorney's fee, in *Wilson.* The case was tried and taken under advisement. Plaintiff had sought in its com-

plaint, in its opening statement and post trial brief, requested by the trial judge, that a reasonable fee be awarded, as provided in the lease, and expressly asked for a hearing on that issue, if the trial court's ruling was favorable to plaintiff on the underlying liability. The trial judge filed a memorandum opinion awarding plaintiff a judgment for unpaid rent and an attorney's fee of one-third of the rent award. Judgment was entered in accordance with the memorandum opinion. Without seeking any post-judgment relief in the trial court, defendant appealed, and on the attorney's fee issue, asserted that it was error to award an attorney's fee based on a percentage of recovery, when the contractual provision called for a "reasonable" fee and that failure to present proof of what a reasonable fee would be constituted a waiver of any fee. Defendant relied upon *Nu–Way Ice Cream Mach. Co. v. Pig 'N Whistle,* 16 Tenn.App. 581, 65 S.W.2d 575 (1933), wherein the Court held, under similar circumstances, that the fee was waived. In *Trice v. Hewgley,* 53 Tenn.App. 259, 381 S.W.2d 589, the Middle Section of the Court of Appeals held to the contrary on the waiver issue and also approved an award based upon a percentage of the recovery, although the note sued upon called for a "reasonable" fee. This Court held that where a "reasonable" fee is called for, the award *must* be based on the guidelines by which a reasonable fee is determined, and not simply a percentage of recovery.

In *Wilson,* we also held that, (1) a trial judge may fix fees of lawyers in causes pending or which have been determined by the court, with or without expert testimony of lawyers and with or without a prima facie showing by the proponent of what a reasonable fee would be; (2) that if the trial judge fixes a fee based upon the appropriate guidelines, the opponent of the fee should be accorded full opportunity to cross-examine the proponent and to present evidence on the fee issue.

In *Kahn v. Kahn,* 756 S.W.2d 685 (Tenn. 1988), we held that opponents of an award of a reasonable fee would not be heard to complain of the lack of proof adduced by the proponent of the fee where a case was fully tried in the trial court, the trial judge awarded a reasonable fee, presumptively based upon the *Connors* factors, and the opponent of the fee failed to request a hearing on the fee or, "convince the appellate courts that he was denied the opportunity to do so through no fault of his own." *Id.* at 697.

■ As stated above, the Commissioner had two weeks notice of the hearing on the fee issue and had before him the lengthy affidavit of Mr. O'Hare stating the hours devoted, the rates charged, the experience of the lawyers and law clerk involved, and comments on the *Connors* factors. Yet, he elected to rely on his brief, containing his counsel's opinions on why the fee sought by plaintiff's lawyer was excessive. As we said in *Kahn,* obviously the trial judge felt that having presided over the trial of the case and having the benefit of Mr. O'Hare's affidavit, and opposing counsel's brief in opposition, and the oral arguments of counsel, he was in a position to properly apply the *Connors* factors and award a reasonable fee without proof or opinion of other lawyers. In accordance with our holdings in *Wilson* and *Kahn,* Commissioner has failed to show that the trial court made the fee award upon inadequate proof by the taxpayer, or that he was denied the opportunity to offer proof in opposition to the fee sought. The Commissioner's request for a remand is denied.

■ The Commissioner says the fee should be reduced because plaintiff's lawyers represented the successful taxpayer in *Cordis Corp. v. Commissioner,* 762 S.W.2d 138 (Tenn.1988); that the precedential value of *Cordis* gave the taxpayer in this case the "upperhand" and it would have been an "upset" if the Commissioner had prevailed in this case. If *Cordis* could be said to be *controlling* precedent for this case, then the *Connors* factor of novelty and difficulty of the issues could not be used to enhance a fee award, but we do not agree that *Cordis* controlled this case. *Cordis* involved implantable pacemakers and hydrocephalus valve systems as prosthetic devices. Whether this taxpayer's

feeding devices qualified as prosthetics appears to us to have presented as novel an issue as that in *Cordis*, and we are persuaded that the Commissioner also thought so, or the case would not have been tried. Taxpayer evidently did not rely entirely on *Cordis*, as Mr. O'Hare states that he made an in-depth study of feeding devices, the conditions under which they were prescribed and used and employed a leading expert in nutritional therapy to serve as an expert witness and consultant to counsel; that at the trial an actual demonstration of the use of enteral and parental feeding systems was presented to illustrate how those systems replaced missing or non-functioning parts of the human body.

■ The Commissioner complains that Mr. O'Hare's affidavit is misleading as to the amount involved in this case; that the original assessment of tax and interest was correctly stated as $877,587 but that before suit was filed the assessment was reduced by $417,800. Taxpayer's complaint correctly alleged the facts as they stood at the time suit was filed and quite obviously taxpayer does not rely on either the December assessment figure or the later figure of $459,787, other than to observe that $50,000 is substantially less than the limitation the legislature declared. In fact, the fee is slightly over one-half of 20% of the tax and interest involved in the prosthetic issue that was tried.

■ The Commissioner also argues that the amount involved and the result obtained are inappropriate in tax cases, because the desired result, winning the case is the prerequisite for receiving any fee; that in tax cases there are no *degrees* of success as in other cases. We do not agree with the Commissioner's argument that the amount involved is not a proper consideration, and although in most tax cases the parties win or lose 100% of each issue, we think there may well be cases in which there are degrees of success. It would be contrary to the entire history and precedent of litigation to say that in awarding a reasonable fee, the amount at risk should not be a factor in the amount of the fee. No one would seriously contend that, all

other factors being equal, the same fee should be awarded in a lawsuit involving $500,000 that would be a reasonable fee in a case involving only $50,000.

■ The Commissioner complains that the *Connors* factors cannot be applied when the Commissioner is entitled to a fee, that the legislature intended that taxpayers and the Commissioner be on a "level playing field" and that also requires reducing taxpayer's fee in this case. We agree that the Commissioner should be on a level playing field and should be entitled to a fee based upon the *Connors* factors and DR–2-106 of the Code of Professional Responsibility. The fact that his lawyers are employed on salary by the State does not prevent application of the factors of the experience, reputation and ability of the lawyer, or the fee customarily charged in the locality for similar legal services. In applying all of the factors the Commissioner should be accorded the same status as though he was a private party litigant, employing lawyers in the private sector.

■ We are satisfied that the trial judge properly considered the appropriate factors in awarding an attorney's fee of $50,000, and our review of the record convinces us that that sum is a reasonable fee in this case.

The Commissioner complains about one item on the list of expenses, an accountant's fee of $3,500, to Arthur Anderson & Company, CPA's. He pursued the same complaint in his brief in the trial court and we are entitled to assume the trial court considered the objection and found it to be without merit and that no request for additional proof by either party was made by the Commissioner and denied by the court.

The judgment of the trial court is in all respects affirmed. Costs are adjudged against the Commissioner.

DROWOTA, C.J., and COOPER, DAUGHTREY and O'BRIEN, JJ.