IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 9, 2001 Session

## RICHARD L. JOHNSON, ET AL. v. STONEY R. HUNTER, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 95C-1573      Thomas Brothers, Judge**

---

**No. M2000-03099-COA-R3-CV - Filed October 25, 2001**

---

The issue in this case involves an equitable *division* of a fixed attorney fee under *quantum meruit.* The trial judge awarded Mr. Cheatham a portion of the fee by multiplying the number of hours invested by an hourly rate.  We hold that this method is not *quantum meruit* which requires a consideration of the factors listed in DR 2-106.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Modified and Remanded**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which WILLIAM B. CAIN, J. joined and DAVID H. WELLES, SP. J., dissented and filed an opinion.

Glen G. Reid, Jr., Memphis, Tennessee, and Robert J. Walker, Nashville, Tennessee, for the appellants, Patrick M. Ardis and Wolff Ardis.

Abby R. Rubenfeld and David B. Lyons, Nashville, Tennessee for the appellee, Denty Cheatham.

### OPINION

This is the second appearance of this arduous and voluminous case which we held required the application of the doctrine of *quantum meruit* to a dispute over a division of attorney fees.  The trial judge initially awarded Mr. Cheatham one-third of a contingent fee; we reversed, upon a finding that Cheatham and Ardis had no meeting of minds on the advancement of expenses which rendered any contract unenforceable.  The case was remanded for the trial court to make a reasonable division of the contingency fee under the theory of *quantum meruit* and based on the factors listed in DR2-106.

The trial court on remand awarded Mr. Cheatham $300,000 plus interest at 10 percent per annum from November 23, 1998.  Ardis appeals.  The award is reduced to $200,000 plus interest accrued at the escrowed rate.

## I.

Our opinion by Judge Lillard in the first appeal is reported at 1999 WL1072562. It recites the history of the case and the reason why the division of the fee must be decided on the theory of *quantum merit.* We held:

> Recovery under the theory of quantum merit is limited to the actual value of services rendered. *See Castelli*, 910 S.W.2d at 428. Cheatham testified that he did not keep hourly billing records for his time spent on the case because it was a contingency fee case. DR 2-106 lists factors on which a reasonable fee can be based:
>
> > (1)      The time and labor required, the novelty and difficulty of the questions involved, and the skill requisit to perform the legal service properly.
> >
> > (2)      The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
> >
> > (3)      The fee customarily charged in the locality for similar legal services.
> >
> > (4)      The amount involved and the results obtained.
> >
> > (5)      The time limitations imposed by the client or by the circumstances.
> >
> > (6)      The nature and length of the professional relationship with the client.
> >
> > (7)      The experience, reputation, and ability of the lawyer or lawyers performing the services.
> >
> > (8)      Whether the fee is fixed or contingent.
>
> Sup. Ct. Rule, Code of Prof. Resp. DR 2-106; *see also Connors v. Connors,* 594 S.W.2d 672, 676 77 (Tenn. 1980) (citing DR 2-106). We find that these factors are applicable to the determination of Cheatham's attorney's fees under the theory of *quantum meruit.*

At the September hearing on attorney's fees, the trial court considered several factors that are included in DR 2-106. The trial court discussed Cheatham's significant contributions to the case, including the fact that he laid the groundwork on the case, the time that he spent working on the case, and the expenses that he paid. The trial court also noted that at the time of Cheatham's withdrawal from the case, the highest settlement offer that had been proposed was $300,000. However, because the trial court utilized a joint venture analysis rather than determining the fee based on *quantum meruit*, findings were not made regarding several factors listed under DR 2-106. For example, the trial court made no findings as to the skill involved in the work Cheatham performed, the extent to which Cheatham's work for the Johnsons precluded him from working on other cases, the fee customarily charged in Nashville for similar legal services, or the nature and length of Cheatham's professional relationship with the Johnsons. Therefore, the factual findings by the trial court are not sufficient for this Court to determine the amount of a reasonable attorney's fee pursuant to DR 2-106. *Consequently, we must remand this case to the trial court for a reasonable division of the contingency fee in accordance with the factors listed in DR 2-106. On remand, the trial court should take into consideration the fact that Cheatham did not participate in the majority of the preparation for trial in this case.* [Emphasis added].

\* \* \* \* \* \* \* \*

In sum, the record indicates that Cheatham and Ardis had no meeting of the minds on the advancement of expenses, which was an essential term of their agreement. The failure to agree on this essential term causes the parties' contract to be unenforceable. Therefore, the law of joint venture is inapplicable and Cheatham's attorney's fees must be based on the value of the services rendered un the theory of *quantum meruit*. The trial court's award to Cheatham of one-third of the contingency fee is reversed. This case is remanded for the trial court to make a reasonable division of the contingency fee under the theory of *quantum meruit* and based on the factors listed in DR 2-106.

We briefly allude to the genesis of this dispute. In 1994 Johnson suffered a brain injury when a pick-up truck he was driving collided with a Chevrolet Camaro equipped with a removable glass roof panel which dislodged and embedded a shard in his brain.

Johnson employed Mr. Cheatham to pursue his claim against Hunter, the driver of the Camaro, whose policy limits were $50,000. Mr. Cheatham turned his attention to the products liability aspect of the matter and contacted the Wolff Ardis law firm which was experienced in product liability cases involving injuries caused by glass.

The Wolff Ardis firm accepted employment. The complaint was amended to include causes of action for product liability against General Motors, Libbey-Owens-Ford Company, and Pittsburg Plate Glass Industries. During the course of the litigation, a dispute arose when it developed that Mr. Cheatham was unwilling to advance his share of expenses for the products liability claim.[1] Mr. Cheatham elected to withdraw from the case. Wolff Ardis then associated the Nashville firm of Bass, Berry & Sims as local counsel. About two weeks before Mr. Cheatham filed his motion to withdraw, General Motors and Libbey-Owens-Ford Company offered to settle for $300,000 which offer was rejected by the plaintiffs. Mr. Cheatham filed his motion to withdraw on September 26, 1997.

More than one year after Mr. Cheatham withdrew, the products liability action was settled for $4,332,500. Two attorneys for the product liability defendants testified that Mr. Cheatham contributed little if anything towards settlement.

The net fee generated by the settlement was $1,422,722.50, from which the trial judge, on remand, awarded Mr. Cheatham $300,000, based upon a finding that he had expended at least "1500 hours in his representation of the plaintiffs,"[2] and that a reasonable hourly fee was $200.00. This calculation has no relation to *quantum meruit;* using the same calculation Wolff Ardis' fee would be $3,800,000, an absurd result. An algebraic approach - 7.9 percent to Mr. Cheatham and 92.1 percent to Wolff Ardis, based solely on hours expended - does not satisfy the mandate of the remand to "take into consideration the fact that Cheatham did not participate in the majority of the preparation for trial in this case." A formulaic solution based on the fact that when Cheatham withdrew with 1500 hours invested, Wolff Ardis had only 6000 hours invested or 32 percent of its total hours, resulting in a fee to Cheatham of $138,817.80, does not comport with *quantum meruit.*

## II.

Wolff Ardis argues that the appropriate standard of review is *de novo* on the record with a presumption that the judgment is correct unless the evidence preponderates against it. Rule 13(d) T.R.A.P.

---

[1] These expenses totaled $800,000 advanced by Wolff Ardis.

[2] Mr. Cheatham kept no time records. The 1500 hours was purely a guesstimate. The total net fee generated by the contractual arrangement with Johnson was $1,422,722.50, which was insufficient to pay the attorneys at their standard hourly rates, had that been the case. Wolff Ardis' documented time records recorded 19,000 hours. Moreover, Mr. Cheatham's guesstimate of 1500 hours included his hours expended on the action against Hunter in which Wolff Ardis did not participate. At the time Cheatham withdrew, Wolff Ardis had 6000 hours invested in the case.

-4-

Mr. Cheatham argues that the appropriate standard of review is whether the trial judge abused his discretion, citing a litany of cases holding *that in the allowance of attorney fees* trial courts are vested with wide discretion. *See, e.g.* **Threadgill v. Threadgill,** 740 S.W.2d 419 (Tenn. Ct. App. 1987). The cases relied upon by Mr. Cheatham are inapposite, because we are not here called upon to fix attorney fees. That has already been accomplished by contract. We are concerned with a proper and justiciable *division of contractual fees* between competing attorneys based on the equitable principles of *quantum meruit* which limits recovery [division] *to actual value of the services rendered.* **Castelli v. Lien**, 910 S.W.2d 420 (Tenn. Ct. App. 1995). The factors on which a reasonable fee can be based are those mandated by DR 2-106, as heretofore noted. We conclude that the proper standard of review is *de novo* on the record accompanied with a presumption that the judgment is correct unless the evidence otherwise preponderates. *See, Alexander v. Inman*, 974 S.W.2d 689 (Tenn. 1998). Accordingly, we consider the evidence adduced on each of the mandated factors.

(1) <u>The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.</u>

The amount of time Mr. Cheatham devoted to the products liability case should be determined. He testified that his best estimate of the total amount of time spent in representing the Johnsons was around 1500 hours, but this is somewhat misleading since he represented them in the negligence action against Hunter.[3]

It cannot be determined from the record the number of hours Mr. Cheatham expended on the Hunter claim. The host of exhibits filed relative to the negotiation of subrogation interests in connection with the proposed settlement of the Hunter claim are revealing, which, when superimposed upon his testimony, demonstrates beyond peradventure that a substantial portion of the time making up his guestimate of 1,500 hours was related solely to his work on the Hunter claim.

Wolff Ardis argues that the only evidence in the record of the amount of time Mr. Cheatham spent on the products liability case is the following testimony of Ardis:

> Q. All right. Based on your personal knowledge and work on the file and work with Mr. Cheatham, what is your best estimate of the total hours Mr. Cheatham would have expended in doing work in connection with those tasks that related to the products liability claim? I'm not talking about the work that related to the underlying Hunter claim, but the products liability claim.

---

[3] The claim against Hunter did not settle until after the products liability claims settled. Wolff Ardis concluded the settlement with Hunter, but made no claim to any of the fee resulting from that settlement.

A. My best estimate on direct contact and communication with Mr. Cheatham would be between 300 and 500 hours. You know, there were two separate issues out here. Mr. Cheatham, Your Honor, had a separate contract dealing with the Stoney Hunter case and Exhibit No. 1 points that out. Wolff Ardis had no ownership, no interest in any recovery on the Stoney Hunter claim and that was . . . and it's in the contract, Your Honor. That was Mr. Cheatham's primary responsibility for the first year, the underlying case against Stoney Hunter which we received nothing from.

We find no testimony in the record in contradiction of the above.

It is not disputed that Wolff Ardis invested 19,000 hours in the products liability case. Applying minimum hourly rates for routine, non-specialized legal work, the value of their services would be $2,120,524. Moreover, Bass, Berry & Sims invested approximately 850 hours of work on the products liability case after Mr. Cheatham withdrew. It is appropriate to consider that of the total hours invested in the products case - 20,350 - Mr. Cheatham contributed 2.5 percent.

With respect to the novelty and difficulty of the questions involved, and the skills requisite to perform the legal service properly, it is clear that Mr. Ardis was the attorney who possessed the necessary knowledge and skills to properly prosecute this case. The trial court found that "this case presented novel and difficult questions of law that required Cheatham to use not only his own skills as an attorney but also required him to use his best efforts to find an associate who was familiar with products liability cases. Mr. Cheatham conceded that he did not have the required knowledge and skills to handle the products liability case. He testified that during a meeting with Richard and Jennifer Johnson;

I told them that I had not had any experience dealing with the products liability cases, other than a few minor cases, but that I would see if I could find someone who could handle it and if we could pursue that, because I thought it would be terrible if all he could get was, say the policy limits in this case.

It was Mr. Cheatham's lack of experience that led him to contact Ardis, and Mrs. Johnson testified about the relative skill of the attorneys when asked why the Johnsons ultimately agreed that Mr. Cheatham should withdraw:

We felt like Mr. Ardis was much more qualified to carry on with our case and had the knowledge and had done most of the work too, at that point in the case, and had the knowledge to continue with our case.

-6-

We agree with Wolff Ardis that the record does not indicate that Mr. Cheatham rendered any services that required special skill, knowledge or expertise. In fact, we note that a number of the services rendered by Mr. Cheatham were services that could have been performed by a paralegal, clerk or runner, such as ordering the police report, ordering medical records and filing documents with the court.

(2) <u>The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.</u>

The trial court found that by accepting this employment, ". . . Cheatham diminished his ability to provide legal services to other clients and impacted on his assistance to his wife in her practice of law in their partnership." It is not clear from the record that Mr. Cheatham's employment in the products case affected other employment.

(3) <u>The fee customarily charged in the locality for similar legal services.</u>

It is difficult to discern from the record the fee customarily charged in Nashville from the kind of services performed by Mr. Cheatham, who admitted that he was not qualified to handle the products liability case. The trial judge found that Mr. Cheatham was entitled to $200.00 per hour, but this finding was based on Mr. Cheatham's customary charges. Since he was not qualified to handle a products liability case, presumably his hourly rate would be considerably less.

(4) <u>The amount involved and the results obtained.</u>

A substantial amount of money is involved in this dispute, and a good result was ultimately obtained for the Johnsons. But the record indicates that Mr. Cheatham's involvement in the results obtained was not significant. The trial court found:

> Clearly, Ardis and Wolff performed significantly more work in this case than Mr. Cheatham did. A great deal of that work took place after Mr. Cheatham's withdrawal. That's for two reasons: number one, clearly, some more work was required of Ardis and Wolff because of Mr. Cheatham's withdrawal. Secondly, the case was approaching the trial, and it was that time of a trial's life when there is more work involved.

Testimony from defense counsel for two of the product defendants establishes that Mr. Cheatham's involvement in the case had virtually noting to do with the settlements ultimately achieved.

At this juncture, we note that our abjuration that the trial court should take into consideration "the fact that Mr. Cheatham did not participate in the majority of the preparation for trial" did not fall upon fertile ground. It is fair to say that Mr. Cheatham conferred no benefit, either to the

Johnsons or Ardis, after he withdrew. For this reason the "results obtained" in assessing the value of Cheatham's services should be measured in large part as of the time of his withdrawal. At that time, no recovery had been obtained. Two weeks before he filed his Motion to Withdraw, a settlement conference was held, which Mr. Cheatham attended, and an offer of settlement of $300,000 was made by General Motors and Libbey-Owens-Ford.

This offer did not approach the value of the case, but the proof clearly demonstrates that the evidence developed by Wolff Ardis after Mr. Cheatham's withdrawal motivated the defendants to re-evaluate the issue of liability.

(5)     Time Limitations.

This factor is not relevant to a resolution of the case.

(6)     The nature and length of the professional relationship with the client.

Mrs. Johnson was the bookkeeper for the firm of Cheatham and Palermo at the time Mr. Johnson was injured. The employer-employee relationship was a pleasant one, but there is no evidence of any prior attorney-client relationship.

(7)     The experience, reputation, and ability of the lawyer performing the services.

It is not disputed that Mr. Cheatham was inexperienced in the products liability area.

(8)     Whether the fee was fixed or contingent.

The fee was contingent. The trial court found that "Cheatham accepted this employment despite the uncertainties and risks of a contingent fee contract." But as the case progressed it was Wolff Ardis who assumed all the risks. In the course of representing the Johnsons pursuant to the contingency fee contract, Wolff Ardis advanced over $800,000 in expenses as compared to a relatively small sum advanced by Mr. Cheatham. The trial court aptly observed that "[a]dvancing expenses of this magnitude in a contingency fee case is clearly an important part of the risk the lawyer assumes in agreeing to take such a case." It is fair to say that if Wolff Ardis had not advanced the funds required to develop the case, the recovery would have been minimal. The proof reveals that in addition to the out-of-pocket costs for experts and the like, Wolff Ardis sent salaried employees to Detroit on numerous occasions to review and obtain what turned out to be over a million pages of documents dealing with the development and structure of the Camaro, as well as crash test videos on the Camaro. The evidence and theories developed as a result of those efforts are what caused the defendants to re-evaluate their exposure in this case.

**III.**

A recovery in *quantum meruit* is limited to the actual value of the services rendered. ***Castelli v. Lien***, 910 S.W.2d 420, 428 (Tenn. Ct. App. 1995). The trial court arrived at its award to Mr. Cheatham of $300,000 by multiplying a "reasonable hourly fee" for Mr. Cheatham by the number of hours he claimed to have spent on the products liability case and on the Hunter matter. Wolff Ardis argues that in utilizing this method to arrive at a division of the fee under *quantum meruit*, the trial court erred in its application of the legal principles governing *quantum meruit*, because the division of the fee was based on the value of the detriment to *Cheatham,* rather than on the value of the respective benefits conferred by Mr. Cheatham and Wolff Ardis. We agree. Tennessee law is clear that an award in *quantum meruit* is not to be determined by the value of the services to the one who performs the services, but instead, should be based on the *value of the benefit conferred.*

In ***McGee v. Maynard*,**[4] we considered the issue of the proper amount of an attorney fee where the attorney was discharged before the litigation was concluded. We held:

> With respect to *quantum meruit* the only proof in the record is appellant's affidavit showing the hours she spent on the case and her hourly rate. A recovery in *quantum meruit*, however, is not measured by the detriment to the plaintiff but by the benefit conferred on the defendant. Castelli v. Lien, 910 S.W.2d 420 (Tenn. App. 1995). **The two are obviously not the same.** In Skeens v. Rust Engineering Company, 1989 WL 70739, at *3 (Tenn. App. June 30, 1989), this Court referred to the factors that bear on a "reasonable" fee in determining the amount of a recovery based on *quantum meruit.* The time devoted to performing the legal service is only one factor in an extensive list. See Rules of the Tennessee Supreme Court, Rule 8, Code of Professional Responsibility, DR 2-106(B).

There is uncontradicted evidence in the record which is critical to a determination of the value of the benefit conferred by Mr. Cheatham. In accord with the parties' agreement, Mr. Cheatham was responsible for preparing the medical, damages and accident portions of the products liability case for trial. He completed none of those tasks. He retained no experts to testify as to the medical aspects of the case nor the economic damages to Johnson. There were three eye witnesses to the accident whose testimony was critical to rebut the defendants' contentions that Johnson was guilty of comparative fault in the accident, but Mr. Cheatham never located, nor did he interview those eye witnesses.

Mr. Cheatham contributed about 7 percent of the total work performed in this case, if his guesstimate of 1500 hours is accepted,[5] and without consideration of the fact that his work was

---

[4] No. 01-A-01-9810-CV-00539, 1999 WL 824298 (Tenn. Ct. App. 1999).

[5] Even so, this number includes his time expended on the negligence action which was settled, as noted, after the products case. Except for the guesstimate, the proof is uncontradicted that Mr. Cheatham expended about 500 hours
(continued...)

routine. Wolff Ardis postulates that on this basis Mr. Cheatham's fee should be $100,990.54 and refers us to the recent case of ***Estate of Carpenter v. Sullivan***[6] as authority for the methodology inherent in a division based on percentages. While this approach obviously has merit, we do not believe that in the circumstances of this case a mathematical solution would comport with the equities involved. Taking into account all of the requisite factors we conclude that the evidence preponderates against the division of the fees as ordered by the trial judge, and preponderates in favor of an award to Mr. Cheatham of $200,000.

## IV.

We now take up the issue of interest on the award, or, better said, the division of the fees.

As noted, an Order was entered on January 9, 1998 allowing Mr. Cheatham to withdraw.[7] This Order directed that there could be no disbursement of fees until a division was determined. After the products liability case was settled, Mr. Cheatham filed a motion that 16 2/3 percent or one-half of the attorney fee be deposited with the Clerk or held by Berry, Bass & Sims pending a hearing on his lien. After he was initially awarded one-third of the generated fee, Mr. Cheatham filed a motion to "deposit funds in dispute with the Clerk." This motion was heard on October 30, 1998 with the trial judge expressing the opinion that more advantageous interest rates might be obtained elsewhere, and directed counsel to reach an agreement accordingly. Consequently, the disputed fee was deposited with Berry, Bass & Simms and presently is held in an escrow account at the law firm of Walker, Bryant & Tipps.[8]

The Order provides that "Cheatham is entitled to recover interest . . . computed at the rate of 10 percent per annum accruing from November 23, 1998 until paid to Mr. Cheatham." This decretal provision is not entirely clear, since the identity of the obligor is not revealed. It is a *division* of funds, and not a *judgment* for or against an entity, with which we are concerned, and the award of a maximum statutory rate of interest, to be paid by Wolff Ardis – apparently – is clearly not authorized.

The fee initially awarded to Mr. Cheatham, i.e., $480,426.59, has remained in escrow since October 1998. The escrow agent will pay to Mr. Cheatham from this account, the sum of $200,000.00 plus interest earned, at the escrowed rate, from November 23, 1998 to the date of

---

[5](...continued)
on the product case. Bass, Berry & Sims, who succeeded Mr. Cheatham, invested 850 hours.

[6] No.03-A01-9810-PB 00335, 1999 WL 486826, (Tenn. Ct. App 1999).

[7] The brief filed on Mr. Cheathams behalf repeatedly recites that he was "forced to withdraw." This is an ambiguous over-statement. It is clear that he withdrew because he could not, or would not, handle his share of the looming expenses and this fact led to discord.

[8] Robert Walker was formerly with Berry, Bass & Sims. When he changed firms, he took the escrowed funds with him.

payment. The balance of $280,426.59, with accrued interest at the escrowed rate, will be paid over to Wolff-Ardis.

Costs are assessed equally. The judgment is modified in accordance herewith and the case is remanded for all necessary purposes.

_____
WILLIAM H. INMAN, SENIOR JUDGE