IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 12, 2005 Session

## HAL GERBER v. VIRGINIA STARR SEGAL

An Appeal from the Chancery Court for Shelby County
No. CH-00-0893-2      Arnold B. Goldin, Chancellor

No. W2004-00805-COA-R3-CV - Filed June 10, 2005

This is the second appeal in an action to collect attorney's fees. The plaintiff attorney represented the defendant in her divorce action, which lasted from 1996 to 1999. He billed the defendant approximately $100,000 for his services. Over the course of the divorce action, the defendant paid the plaintiff about $61,000, and still owed a balance of about $39,000. The attorney filed this lawsuit to recover the balance. After a two-day trial, the trial court concluded that the plaintiff attorney's fees were fair and reasonable, and that the defendant owed the plaintiff the fees claimed. The defendant now appeals that decision. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, SP. J., and JAMES F. BUTLER, SP. J., joined.

Ed M. Hurley, Memphis, Tennessee, for the appellant, Virginia Starr Segal.

James D. Wilson, Memphis, Tennessee, for the appellee, Hal Gerber.

### OPINION

Plaintiff/Appellee Hal Gerber ("Gerber"), an attorney, represented the Defendant/Appellant Virginia Starr Segal ("Segal") in her divorce from her husband of twenty-eight years. The divorce proceedings lasted over three years, beginning in January 1996 and ending in June 1999. In the course of the divorce proceedings, Segal gave sworn testimony that her outstanding balance to Gerber was $54,647.57 plus $7,500 in accounting fees. As part of the divorce decree, Segal's former husband was ordered to pay $15,000 of her attorney's fees. That amount has been paid into the court clerk's office and is still being held pending the outcome of this litigation. *See Gerber v. Segal*, W2001-01709-COA-R3-CV, 2003 WL 327519, at *1 (Tenn. Ct. App. Feb. 11, 2003).

On May 9, 2000, Gerber filed this lawsuit against Segal to collect his fees. In the initial proceedings, evidence was introduced to show that Gerber had billed Segal a total of $98,323.31

for his representation of Segal in the divorce. Segal said that she had already paid almost $60,000 in fees, and asserted that paying any more would be excessive. The trial court determined that in light of the sworn statement Segal had given in the divorce proceedings, she was judicially estopped from asserting that she owed less than the amounts in the sworn statement, $54,647.57 in attorney's fees and $7,500 in accounting fees. On this basis, the trial court granted Gerber partial summary judgment and appointed a special master to determine what credits, if any, applied to the remaining debt. The special master determined that, after credits, Segal owed Gerber $31,137 in attorney's fees plus the $7,500 in accounting costs. The trial court modified the determination of the special master by reducing the amount of fees due to $30,998.75, and entered a judgment in favor of Gerber in that amount. Segal appealed, and this Court reversed the trial court's application of the doctrine of judicial estoppel. *See id.* at *3. The appellate court remanded to the trial court to determine what agreement, if any, had been reached by the parties when Segal retained Gerber. If the parties had no agreement, the appellate court stated, then Gerber would be entitled to recover under a theory of *quantum meruit*. The appellate court explained:

> Therefore, a determination of what, if any, agreement was reached between the parties must be made prior to addressing the reasonableness question. On remand, if the [trial] court determines there was not an enforceable contract entered into by the parties, [Gerber] will be entitled to recover under a theory of quantum meruit. *See White v. McBride*, 937 S.W.2d 796, 803 (Tenn. 1996) (stating that, excepting in cases where an attorney "enters into a fee contract, or attempts to collect a fee that is clearly excessive . . . ." that "the principle of fairness . . . support[s] an award of fees on a quantum meruit basis.") . . . . As such, the end result of the proceedings on remand may very well be that the [Gerber] receives the fees which he is requesting. However, in the absence of a written contract and where, as here, the parties differ as to the contents of an alleged oral agreement, the court should have undertaken an independent assessment of what represents a reasonable fee.

*Id.* at *4 (footnote omitted). The appellate court then noted that, in determining the reasonableness of an attorney's fee, a court must apply the factors enumerated in *Connors v. Connors*, 594 S.W.2d 672 (Tenn. 1980). In applying the doctrine of judicial estoppel, the appellate court held, the trial court had failed to exercise its own judgment in determining what represented a reasonable fee, considering the *Connors* factors. For those reasons, the appellate court reversed and remanded to the trial court for further proceedings.

On remand, the trial court conducted a hearing on February 9 and 13, 2003. At the hearing, several witnesses testified on Gerber's behalf. Rodney Boyce ("Boyce") testified that he worked for Gerber as a paralegal for twelve years, and that, during that time, he worked on Segal's divorce case. His duties included attending depositions, attending court hearings, making deliveries to Segal's home, filing documents, and keeping the case file organized. Boyce said that some of the work he performed on Segal's case was billed directly to her, but other work on her behalf, such as delivering papers to her house, was not charged to her. Boyce noted that Gerber's law practice had been closed since 1996, but that he helped locate the fee bills on Segal's case. A photograph of Boyce taken

beside four "banker's boxes" containing documents related to Defendant's divorce case was entered as an exhibit at trial.

An attorney, Louie Polk ("Polk"), testified for Gerber as well. Polk practiced law with Gerber for thirteen years, including the time period in which Gerber represented Segal in her divorce. Polk did not work on Segal's case because of a conflict of interest.[1] Instead, he testified about his observations and knowledge of Gerber. Polk saw Segal conferencing with Gerber, Boyce, and the accountant, and that she was in their office "a lot" in preparation of her case. Polk said that he had never known Gerber to charge a rate of $125 per hour for any case he worked on. Polk stated that Gerber usually worked on "high dollar" divorce cases, involving at least $100,000 in assets and more complex issues, and that Gerber would refer the smaller divorce cases to him. He testified that he was familiar with the range of reasonable fees charged in domestic relations cases during the relevant time period, and that he thought $250 per hour for at attorney of comparable skill to Gerber was "on the low end." He said that Gerber was highly respected as a lawyer and pointed out that, in 1997, Gerber received a prestigious award from the local bar association, denoting recognition by his peers.

Andrew Gipson ("Gipson"), an accountant, also testified on behalf of Gerber. Gipson stated that he worked with Gerber on Segal's file, to assist Gerber in evaluating the financial aspects of the marital estate. Segal's former husband had owned three cash-based businesses – a pawn shop, a video game store, and a liquor store that cashed a large volume of checks – and the businesses had to be valued in order to determine the total value of the marital estate. Segal felt that her former husband was siphoning cash from the businesses, and Gipson worked with Boyce in an attempt to determine the amount of money actually being generated. Gipson said that valuating Segal's husband's businesses was "extremely complicated" and observed that "[g]etting information from opposing counsel was extremely difficult." Gipson attended two mediation hearings in Segal's case; in the final mediation hearing, the mediator valued the parties' marital assets at $231,549, of which $115,775 was awarded to Segal. *Gerber*, 2003 WL 327519, at *1 n.2.

Gipson testified that, in his experience, the 400 to 450 hours spent by Gerber on Segal's case was reasonable, given the complexities involved. Gipson stated that Gerber's hourly rate of $250 was typical. Gipson said that Segal paid Gerber $34,685.74 from the sale of the marital home, and another $22,000 in cash in partial payment of her attorney's fees. When the cash payment was made, Gipson was present. He said that Gerber gave Segal a receipt which reflected a balance due of $31,137, and that Segal did not disagree with the balance due at that time. Gipson stated that he charged $75 per hour for his accounting services, and although his bill to Segal was around $8,300, he had agreed to accept $7,500. At the time of the hearing, he had not yet been paid.

Gerber testified on his own behalf. He said that he had been practicing law since 1948, and that since 1990 he had worked primarily on divorce cases. Segal retained his services when she filed her first petition for divorce in 1992. He submitted into evidence a copy of an employment contract

---

[1] Polk's daughter and Segal's daughter were classmates and good friends.

in which Segal had agreed to pay him $250 per hour for his services. In 1993, Segal and her husband reconciled, and the first divorce action was dismissed. In 1996, Segal again contacted Gerber, and Gerber said that he agreed to represent Segal on the same terms as were in the original employment contract. In 1999, the divorce case was submitted to binding mediation, which lasted about four days, and the mediator entered a memorandum opinion which was submitted into evidence.

Gerber submitted into evidence copies of his fee bills. He asserted that the time spent on the case was reasonable, in light of the difficulty and acrimony. Gerber said it was especially difficult because Segal's husband was hiding assets, and because Segal was very emotional, both being circumstances that required more time of him. Gerber said that his hourly rate of $250 was reasonable when compared with other lawyers in the community, and that he had been charging that rate since 1980. He also asserted that his fee was reasonable in light of the economic benefits gained by Segal in her divorce.

Suzanne Landers ("Landers"), an attorney who had been practicing law for almost twenty years, testified as an expert regarding the reasonableness of the fees charged by Gerber. She described Gerber as a highly respected attorney, skilled in divorce litigation. Landers said that the $250 hourly rate was reasonable and that spending 400 to 450 hours on Segal's case over the three and one half year period was reasonable, particularly in light of the complexity of the issues related to the valuation of the former husband's businesses.

Segal testified on her own behalf. She agreed that the main complications in the case involved the valuation of her former husband's businesses. Segal said that Gerber took discovery to investigate the value of the businesses, but failed to show that the husband had an ownership interest in the liquor store, which he claimed was owned by his mother. Segal claimed that she did not have an agreement with Gerber beginning in 1996 regarding the amount he would charge her for his representation. She said, "I kept thinking he was saying $125 an hour is all he ever said." She said that she did not know how much he was charging her. She did not understand the statements she received, and Gerber never explained the receipt showing that she still owed him a balance of $31,137. Segal admitted that Gerber did a lot of work in 1996 until March 1997, but said that nothing was done in 1998. Segal complained that Gerber's fees were almost as much as she was awarded in the divorce. Segal said that, when the divorce proceedings were over, she was unable to pay Gerber any money and was forced to file bankruptcy to save her home.

At the conclusion of the hearing, the trial court found that "this case was of a particularly contentious nature. . . . There was particular contentiousness and also very complicated issues regarding cash-based businesses." The trial court further determined that "the fees charged were not unreasonable; in fact, were reasonable as determined by the expert witness that testified, by the documentation that was provided, and by the proof that was heard by the Court." On February 26, 2004, the trial court entered an order consistent with its oral ruling, granting Gerber a judgment against Segal for $37,887.57 in attorney's fees and accounting fees, and awarding prejudgment interest at 4% from June 18, 2001, the date of the final divorce decree, for a total award of $41,928.90. The order stated expressly that, "upon consideration of all the relevant factors set forth

-4-

in *Connors v. Connors*, 594 S.W.2d 672 (Tenn. 1980), the fee charged by [Gerber] to [Segal] for the legal services performed in the [Segal]'s divorce case was fair and reasonable." From that order, Segal now appeals.

On appeal, Segal argues that the total fee charged to her was unreasonable, and that the trial court failed to follow the order of remand issued by this Court in the first appeal. She concedes that the testimony at trial supported Gerber's contention that his charges were reasonable and justified. Segal argues, however, that the proof offered by Gerber was biased in his favor, and that the trial court was required to exercise its own independent judgment in determining the reasonableness of the fees claimed by Gerber, beyond the evidence presented at trial. Segal explained that she did not put on any witnesses to rebut Gerber's proof "because the Court of Appeals instructed the trial court to arrive at its own independent judgment as to the reasonableness of the attorneys fees . . . ." On this basis, Segal argues, the award should be reversed. In addition, Segal argues, the trial court abused its discretion in granting Gerber prejudgment interest.

Because this case was tried without a jury, we review the trial court's findings of fact *de novo* on the record, presuming those findings to be correct unless the evidence preponderates otherwise. *Alexander v. Inman*, 974 S.W.2d 689, 692 (Tenn. 1998). We review the trial court's conclusions of law *de novo*, with no such presumption of correctness. *Id.*; Tenn. R. App. P. 13(d). An award of prejudgment interest is reviewed for an abuse of discretion. *York v. Vulcan Materials Co.*, 63 S.W.3d 384, 390 (Tenn. Ct. App. 2001).

As noted in the first appeal in this case, the factors in *Connors v. Connors*, 594 S.W.2d 672 (Tenn. 1980), must be considered in determining whether the fee charged by Gerber was reasonable. Those factors are as follows:

1. The time devoted to performing the legal service.
2. The time limitations imposed by the circumstances.
3. The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.
4. The fee customarily charged in the locality for similar services.
5. The amount involved and the results obtained.
6. The experience, reputation, and ability of the lawyer performing the legal service.

*Conners*, 594 S.W.2d at 676. The trial court below mentioned these factors in rendering its decision, and it concluded that the factors weighed in favor of a finding that the fees charged by Gerber were reasonable. Factors of particular note as tending to justify the fee were the contentious nature of the proceedings and the considerable efforts to uncover hidden assets.

In this case, the testimony supports a finding that the 400 to 450 hours Gerber spent on Segal's case was necessary, and that the hourly rate of $250 charged by Gerber was reasonable in light of custom in the community and Gerber's experience, reputation, and ability. Segal asserts that Gerber's total fee of $98,000 was "unconscionable and inequitable" under the circumstances, and

that the trial court should have used its own judgment and experience to determine that the fee was unreasonable. Indeed, the fee charged is very high, and certainly out of proportion to the total marital estate in this case. However, the reasonableness of an attorney's fee must be determined based on the proof at trial, which supports a finding of reasonableness under all of the circumstances. Here, the trial court's application of the ***Conners*** factors to the facts of this case was supported by evidence in the record. Therefore, we affirm the trial court's decision.

Segal also argues that the trial court erred in awarding prejudgment interest in this case. An award of prejudgment interest is within the trial court's sound discretion. Such an award is allowable when the amount in dispute is certain and not disputed on reasonable grounds. ***Mitchell v. Mitchell***, 876 S.W.2d 830, 832 (Tenn. 1994). We find that the trial court did not abuse its discretion in awarded prejudgment interest under the facts of this case.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Virginia Starr Segal, and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE