PEOPLES NATIONAL BANK OF
WASHINGTON, Appellee,

v.

Robert Haden KING, Jr. and Betty
King, Appellants.

Supreme Court of Tennessee,
at Nashville.

Sept. 30, 1985.

Robert L. Sullivan, Neal & Harwell,
Nashville, for appellee.

Ronald J. Berke, Berke, Berke & Berke,
Chattanooga, for appellants.

OPINION

FONES, Justice.

We granted this rule eleven application
for permission to appeal to consider wheth-
er an unendorsed check is subject to attach-
ment and whether the expenses directly
incurred by an attorney in the prosecution
of his client's claim are entitled to lien
status under T.C.A. section 23-2-102 where

expenses are expressly provided for in the contract with the client.

Chattanooga attorney Ronald J. Berke represented defendant Robert H. King, Jr. in his claim for personal injuries arising out of a Crossville, Tennessee airplane crash. A sliding-scale formula was agreed upon to determine the amount of Mr. Berke's contingent fee: fifty percent of the first fifty thousand dollars, forty percent of the second fifty thousand dollars, thirty percent of the next fifty thousand dollars, and twenty percent of all remaining sums. It was additionally agreed that Mr. Berke would be reimbursed from any monies recovered for his expenses in prosecuting the suit.[1] King Jr. had been convicted of one or more serious crimes and had indictments pending against him, in the State of Washington, which, together with other factors led to a settlement of defendants' claim for only fifteen thousand dollars. It is the settlement check made out to Robert Haden King, Jr., Betty Dunne King, and the law firm of Berke, Berke & Berke, that is the subject of the case at bar.

On January 27, 1981, plaintiff Peoples National Bank of Washington obtained a default judgment in the principal sum of $15,680.55 plus interest, costs and attorney's fees against the defendants Robert H. King, Jr. and Betty King in the Superior Court for the County of King, Washington. On April 2, 1982, plaintiff filed in the Chancery Court of Davidson County, Tennessee, a petition to enforce the Washington judgment pursuant to the Uniform Enforcement of Foreign Judgments Act, T.C.A. section 26–6–101, *et seq.* Process was issued on April 6, 1982, for service through the Secretary of State upon defendant King Jr. at the King County Jail in Seattle, Washington. The return on that process

showed that a person other than King signed the receipt for the summons, and a second summons was promptly issued to the same address and returned, signed by Robert Haden King, Jr.

Plaintiff amended its petition to enforce the foreign judgment on April 26, 1982, praying for an attachment of defendant's property, specifically a fifteen thousand dollar settlement check which was either in Mr. Berke's possession or in the hands of a Nashville attorney, George McGugin. A writ of attachment issued to the Sheriff of Davidson County and a counterpart writ issued to the Sheriff of Hamilton County. The Davidson County writ was returned showing that McGugin had mailed the check to Mr. Berke in Chattanooga. The Sheriff of Hamilton County found the check to be in Mr. Berke's possession and executed the attachment.[2]

A motion to dismiss was filed on the grounds that venue did not lie in Davidson County, but was in Hamilton County because the funds were attached in Hamilton County and none were found in Davidson County. The trial court overruled that motion and an answer was filed wherein venue was denied but no grounds attacking venue were specified. The only other issue mentioned in the answer was that the attorney's fees and expenses incurred "should be deducted and protected from any attachment." This Court agrees with the Court of Appeals' conclusion that this action was originally brought as a suit to enforce a foreign judgment; that the attachment was ancillary, in aid of that suit and that the writ issued to Davidson County and the counterpart writ to Hamilton County were valid. *See*, T.C.A. sections 29–6–127 through 29–6–130. Other aspects

1. This fee contract was negotiated in defendant's behalf by his father, Mr. Robert H. King, Sr., a Gadsden, Alabama attorney whose own practice consisted primarily of personal injury litigation. Mr. King, Sr. had originally planned to assist Mr. Berke in the prosecution of the suit, but his plan had to be abandoned when it became apparent that he would have to be a witness in the case. His objective in formulating such an arrangement was to keep Berke's

fee "equitable" when the verdict "hit the big figures," which was apparently an expectation at that time. Defendant, Robert H. King, Jr., himself a law school graduate, was informed of the fee arrangement and confirmed it.

2. The check was issued on March 15, 1982, payable to defendants Robert King, Jr., Betty King and Berke.

of the venue question presented for the first time on appeal are considered by this Court to have been waived. *See*, T.R.A.P. 36(a).

The trial judge awarded Berke an attorney's fee of fifty percent of the recovery as a lien having priority over plaintiff's judgment.

## I.

Both of the courts below rejected defendants' contention that a check is not subject to attachment.

The common law rule, in at least twelve states, was that promissory notes and checks could not be seized under attachment and sold under execution against the owner since they were regarded as mere choses in action. See 41 A.L.R. 1004. That annotation cites *Moore v. Pillow*, 22 Tenn. 448 (3 Humphrey) (1842) as adhering to that rule. In *Moore* an execution was issued against one Maxwell and in aid thereof a garnishment was served upon Pillow, who answered that he was not indebted to Maxwell but did have in his possession a promissory note belonging to Maxwell that was not then due. The court held that the note was "an evidence of debt and no more;" that the possession of a note belonging to another, not yet due, would not authorize a judgment against the possessor. The court added, unnecessarily it seems, that no "proceeding of any kind against the note" was authorized for it was not the subject of execution.

However, the later cases of *Matheny v. Hughes*, 57 Tenn. 401, 404 (10 Heisk.) (1873) and *Kimbrough v. Hornsby*, 113 Tenn. 605, 613, 84 S.W. 613 (1904) state that "before the enactment of the Code, it has been held by this Court that a negotiable note might be attached ..."

Regardless of the rule at common law, the Legislature has authorized the attach-

ment of equitable interests, debts and choses in action. T.C.A. section 29–6–132.[3]

The Uniform Commercial Code clearly contemplates that commercial paper is subject to seizure by legal process and judicial sale. T.C.A. section 47–3–302(3)(a) expressly provides that a holder does not become a holder in due course of an instrument "by purchase of it at a judicial sale or by taking it under legal process."

■ The attachment of a check may or may not result in making the fund it evidences available for distribution in accord with the judgment of the court. Obviously, to insure that result it would be necessary to have not only the payees but the maker or drawer and the drawee bank in court by garnishment or other process. However, the mere fact that attachment of a check is not a complete remedy in and of itself does not require that it be declared unavailable for attachment. A payee of a check has a right to receive the money evidenced by the check upon his endorsement, which the court can order. It is that interest that the Legislature has made subject to attachment.

## II.

We hold that the Court of Appeals erred in concluding that the attorney's lien granted by T.C.A. section 23–2–102[4] extended only to Berke's contractual contingent fee agreement. It was undisputed that the fee contract expressly provided that Berke would be compensated as well for any expenses he incurred in pursuing King's claim. Our cases have long held that an attorney is entitled to compensation in the amount agreed upon by contract, provided that the contract is fair at its inception and entered into in good faith. *Hunt v. McClanahan*, 48 Tenn. (1 Heisk.) 503, 509 (1870); *Bright v. Taylor*, 36 Tenn. (4 Sneed) 159,

---

**3.** That statute reads as follows:

*Property subject to levy.*—Attachments may be levied upon any real or personal property of either a legal or equitable nature, debts or choses in action, whether due or not due, in which the defendant has an interest.

**4.** That statute reads as follows:

*Lien on right of action.*—Attorneys and solicitors of record who begin a suit shall have a lien upon the plaintiff's or complainant's right of action from the date of the filing of the suit.

162 (1856) and *McClain v. Williams*, 16 Tenn. (8 Yerg.) 230 (1835).

We have also recognized that an attorney is entitled to a lien upon his client's recovery for the amount of compensation settled by contract. *Railroad v. Wells*, 104 Tenn. 706, 59 S.W. 1041 (1900) and *Perkins v. Perkins*, 56 Tenn. (9 Heisk.) 95 (1871).

■ We are of the opinion that the statutory lien encompasses expenses directly, necessarily and reasonably incurred by the attorney in the prosecution of the action or claim that has resulted in a recovery for the client. The Sixth Circuit Court of Appeals noted in 1898 that "[t]he labor and the money expended are equally the property of the lawyer, and alike necessary to the prosecution of the suit. In substance, they are intrinsically connected,—the service, and the expenses incurred in rendering it." *McDougall v. Hazelton Tripod-Boiler Co.*, 88 Fed. 217 (6th Cir.1898). We find Judge Severens' reasoning in the *McDougall* case persuasive, and conclude that there should be no distinction between compensation for services and expenses necessarily incurred in the rendition of the professional service.

■ At trial Robert King, Sr., a member of the Alabama Bar, presented a claim for reimbursement for medical expenses that his son incurred as a result of his injuries in the airplane crash, advances of cash to his son and his expenses in helping Berke pursue and settle the lawsuit.

Obviously, while King Jr. may be indebted to his father for those items, they could not be considered as having priority over plaintiff's judgment, or as directly connected with the prosecution of King Jr's. action.

■ Attorney Berke presented a list of expenses totaling $5,296.90. There are a number of items on that list that are not supported by sufficient documentation or testimony to determine whether or not they were directly necessary and reasonably incurred by his lawyer in the prosecution of King Jr's. action for personal injuries, including, but not limited to, expert witness —$1,550, photo copying—$1,468.75, the travel and telephone items. Any sums that Berke may have paid on King Jr's. medical bills for treatment of his injuries were not necessary to the prosecution of King's action and are not lienable. It is, therefore, necessary that this case be remanded for a hearing to determine what expenses were incurred by Berke that were directly, necessarily and reasonably incurred in the prosecution of King, Jr's. personal injury action.

■ The result is that the judgment of the Court of Appeals is affirmed, except insofar as it denied lien status to the expenses incurred by attorney Berke, to the extent adjudged herein. This case is remanded to the trial court for a determination of Berke's expenses entitled to be deducted from defendant King, Jr's. recovery; the entry and enforcement of an appropriate decree awarding Berke a lien in the sum of $7,500 attorney's fees, plus the expenses so determined and the balance to plaintiff, and for such other actions and adjudications as may be necessary to effect the distribution of defendant King, Jr's. recovery.

Costs are adjudged one-half against appellant and one-half against appellees.

COOPER, C.J., and BROCK, HARBISON, DROWOTA, JJ., concur.