IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 24, 2004 Session

MICHELLE STALLS v. DOROTHY J. POUNDERS, ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. CT-002659-03     Robert A. Lanier, Judge

No. W2003-02933-COA-R3-CV - Filed January 27, 2005

This case arises out of an action filed by the former client of an attorney, seeking damages pursuant to the Tennessee Consumer Protection Act and theories of breach of contract, fraudulent misrepresentation, and common law fraud. Appellees filed a motion for summary judgment in the trial court below, and the court granted the motion. Appellant now seeks review by this Court, and, for the following reasons, we remand for further proceedings consistent with this opinion.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and DAVID G. HAYES, S.J., joined.

Tim Edwards, Memphis, TN, for Appellant

Jef Feibelman, Memphis, TN, for Appellees

OPINION

Facts and Procedural History

In January 2003, Michelle Stalls ("Stalls" or "Appellant") engaged Dorothy J. Pounders ("Pounders") and the law firm of Pounders Coleman (the "law firm" or collectively with Pounders, the "Appellees") to provide legal representation for her in her divorce. The fee agreement between Stalls, Pounders, and the law firm is contained in a letter from Pounders to Stalls, which memorializes a conversation Pounders had with Stalls. Such letter provides the following:

> [Y]ou were advised that a minimum non-refundable retainer would be required in the amount of $5,000.00, $1,200.00 paid on January 29, 2003; the balance due in full and that the retainer would be billed against hours worked at the hourly rate of

$320.00 per hour; $230.00 for partners, $180.00 to $200.00 per hour for associates and $110.00 to $125.00 per hour for paralegals.

Stalls paid the $5,000.00 non-refundable retainer fee in two installments. All amounts billed by personnel in the law firm were credited against the $5,000.00 non-refundable retainer fee, and Stalls would need to pay additional amounts only if she incurred fees over and above the $5,000.00 non-refundable retainer fee. The record reveals that Pounders and the law firm did not bill Stalls more than $5,000.00.

The attorney-client relationship between Stalls, Pounders, and the law firm lasted until April 15, 2003. At that time, Pounders terminated the representation[1] due to Stalls' failure to disclose certain relevant facts about a piece of marital property.[2] Pounders sent Stalls a letter confirming the termination of the attorney-client relationship for Stalls' failure to be truthful. In response, Stalls sent Pounders a handwritten letter stating the following:

Dear Dottie,

It is with much regret that I write this letter. Friday I received your letter notifying me of your withdrawal as my legal counsel. I am stunned at my own behavior. I cannot imagine why I did such a foolish thing. Please accept my sincere apology for being untruthful, and for putting you in such an embarrasing [sic] position. I do understand your decision.

I would like for you to know I truly appreciate the time, thought, and effort you invested in my case. You were so very highly recommended to me, and I hope to find counsel I can trust and have faith in as I had in you.

This is an extremely difficult time in my life. I have never encountered such a situation as divorce. It is draining in every way for me. I would like to ask if you would give generous thought to reconsidering on one matter. I have no right to ask, and I only will do so out of dire necessity. I must retain another attorney, and it would be such a tremendous blessing if you would refund the balance, or any part of it, of my retainer fee. Obviously you are not required to, it would only be a gracious act greatly appreciated.

Once again, many thanks to you and your staff. I hold you in the highest esteem and regard, and with all respect. I proudly recommend you when I speak with someone considering divorce. I wish you continued success and much happiness.

Sincerely,
/s/ Michelle Stalls

---

[1] Though Stalls' original complaint alleges that she terminated the attorney-client relationship, the balance of the record supports the fact that Pounders withdrew as Stalls' counsel.

[2] From the record, it appears that Stalls' ex-husband filed a petition for criminal contempt on the basis that Stalls sold items of marital property without the knowledge of Stalls' ex-husband.

In the course of representing Stalls, Pounders primarily worked on establishing an injunction for how Stalls and her ex-husband would behave around their children and defended Stalls against two petitions for criminal contempt, both of which resulted in consent orders. Subsequently, another attorney assumed the legal representation of Stalls in her divorce and received various letters and ledgers listing the fees Stalls incurred while being represented by Pounders and the law firm.

Shortly after retaining a new attorney, Stalls filed a claim against Pounders and the law firm seeking damages under the Tennessee Consumer Protection Act and theories of breach of contract, fraudulent misrepresentation, and common law fraud.[3] Pounders and the law firm filed a motion to dismiss, which the trial court denied. However, Pounders and the law firm filed a motion for summary judgment, which the trial court granted. Stalls appeals to this Court and presents the following issue, as we perceive it, for our review: whether the trial court erred when it determined a non-refundable retainer fee was valid and granted summary judgment in favor of Pounders and the law firm. For the following reasons, we remand for further proceedings consistent with this opinion.

## Standard of Review

On a summary judgment motion, a movant must demonstrate that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03; *Holt v. Holt*, 995 S.W.2d 68, 71 (Tenn. 1999). "We must take the strongest view of the evidence in favor of the nonmoving party, allowing all reasonable inferences in favor of the nonmovant and discarding all countervailing evidence." *Holt*, 995 S.W.2d at 71 (citing *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998)). Our review concerns only questions of law, and, therefore, our review is *de novo* on the record, giving the trial court's judgment no presumption of correctness. *Id.* (citing *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)).

## Law and Analysis

Appellant begins by arguing that a non-refundable retainer fee is unethical and unlawful in the State of Tennessee, and, therefore, the trial court erred when it ruled that such a fee was valid in this case. It appears that this appeal is the first instance this Court has been asked to address this

---

[3] Stalls alleges fraudulent billing by Pounders and the law firm. Because the total amount of fees incurred did not exceed the $5,000.00 non-refundable retainer, we need only determine whether the non-refundable retainer fee was valid and that Pounders and the law firm were entitled to such fee. In doing so, however, we make no finding regarding the ethical propriety or impropriety of such a practice.

issue.  Disciplinary Rule 2-106 of the former Code of Professional Responsibility[4] provided the following:

> Fees for Legal Services. – (A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
> (B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.  Factors to be considered as guides in determining the reasonableness of a fee include the following:
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
> (3) The fee customarily charged in the locality for similar legal services.
> (4) The amount involved and the results obtained.
> (5) The time limitations imposed by the client or by the circumstances.
> (6) The nature and length of the professional relationship with the client.
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
> (8) Whether the fee is fixed or contingent.
> (C) A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case.

---

[4] We cite the former Code of Professional Responsibility because it was in effect at the time Appellees charged Appellant the non-refundable retainer fee.  We note, however, that similar provisions exist in the current Rules of Professional Conduct, which became effective March 1, 2003.  Rule 1.5 of the Rules of Professional Conduct closely mirrors Disciplinary Rule 2-106 and provides:

> Fees. – (a) A lawyer's fee and charges for expenses shall be reasonable.  The factors to be considered in determining the reasonableness of a fee include the following:
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) The fee customarily charged in the locality for similar legal services;
> (4) The amount involved and the results obtained;
> (5) The time limitations imposed by the client or by the circumstances;
> (6) The nature and length of the professional relationship with the client;
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) Whether the fee is fixed or contingent;
> (9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
> (10) Whether the fee agreement is in writing.
> (b) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

Tenn. Sup. Ct. R. 8, RPC 1.5 (2004).

Tenn. Sup. Ct. R. 8, Canon 2-106 (1998).

Further, Disciplinary Rule 9-102 of the former Code of Professional Responsibility[5] provided, with regard to the preservation of the identity of funds:

> Preserving Identity of Funds and Property of a Client. – (A) All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable insured depository institutions maintained in the state in which the law office is situated.
> . . . . No funds belonging to the lawyer or law firm shall be deposited therein except as follows:
> (1) Funds reasonably sufficient to pay service charges may be deposited therein;
> (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
> (B) A lawyer shall:
> (1) Promptly notify a client of the receipt of the client's funds, securities, or other properties;
> (2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable;
> (3) Maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them;
> (4) Promptly pay or deliver to the client as requested by a client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive.

---

[5] Again, the current Rule of Professional Conduct resembles Disciplinary Rule 9-102. Rule 1.15 of the Rules of Professional Conduct provides that "[f]unds belonging to clients or third persons shall be kept in a separate account maintained in an insured depository institution located in the state where the lawyer's office is situated . . . and which participates in the overdraft notification program as required by Supreme Court Rule 9." Tenn. Sup. Ct. R. 8, RPC 1.15(a)(1) (2004). Additionally, Rule 1.16 of the Rules of Professional Conduct provides:

> (d) Upon termination of the representation of a client, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, including:
>
> . . . .
>
> (4) Promptly refunding to the client any advance payment for expenses that have not been incurred by the lawyer; and
> (5) Promptly refunding any advance payment for fees that have not been earned.

Tenn. Sup. Ct. R. 8, RPC 1.16(d) (2004).

Tenn. Sup. Ct. R. 8, Canon 9-102 (1998).

Though these rules do not address the issue of whether a non-refundable retainer fee is valid in the State of Tennessee, Formal Ethics Opinions rendered by Ethics Committees of the Board of Professional Responsibility have addressed the question. While Formal Ethics Opinions are only binding on the Ethics Committee, the person requesting the Formal Ethics Opinion, and the Tennessee Supreme Court Board of Professional Responsibility, it is still "a body of principles and objectives upon which members of the bar can rely for guidance in many specific situations." Tenn. Sup. Ct. R. 9, § 26.5(a) (2004).

The first opinion to address non-refundable retainer fees was Formal Ethics Opinion 92-F-128 which states the following:

> In limited instances an attorney may receive an advanced earned fee in the nature of an unrefundable retainer fee designed to compensate the attorney for being available to represent a client, or to compensate the attorney for committing time for representation precluding acceptance of other employment, or to compensate the attorney for being precluded from taking an adversary interest or position because of conflicting interests or for having received privileged information.

Tennessee Supreme Court Ethics Committee, Formal Ethics Op. 92-F-128 (1992). The opinion further states that it is unclear whether a non-refundable retainer fee would be valid and that such a fee could be subject to refunding in certain instances. Tennessee Supreme Court Ethics Committee, Formal Ethics Op. 92-F-128 (1992). The opinion concludes that pre-paid, advanced or retainer fees are refundable in the absence of a clear understanding by the client to the contrary, preferably in writing. Tennessee Supreme Court Ethics Committee, Formal Ethics Op. 92-F-128 (1992).

The second formal Ethics Opinion addressing this issue begins by stating that "all unearned attorney fees of any kind or nature paid by or on behalf of a client to an attorney are funds which belong in part to the client." Tennessee Supreme Court Ethics Committee, Formal Ethics Op. 92-F-128(a) (1992). However, the opinion later addresses circumstances where an advanced fee may be deemed an "earned" fee:

> An attorney may receive an advanced earned fee in the nature of an unrefundable retainer fee in the following limited instances: (1) to compensate the attorney for being available to represent a client, (2) to compensate the attorney for committing time for representation precluding acceptance of other employment, (3) to compensate the attorney for being precluded from taking an adversary interest or position because of conflicting interests or because of the receipt of privileged information. Advanced fees or flat fees involving criminal law, domestic or family law or juvenile law may be earned fees.

Tennessee Supreme Court Ethics Committee, Formal Ethics Op. 92-F-128(a) (1992). Again, the committee emphasizes that the fee could be subject to refunding in certain instances. Tennessee Supreme Court Ethics Committee, Formal Ethics Op. 92-F-128(a) (1992). It further reiterates that "[i]n all instances where advanced or flat fees are deemed to be earned fees there must be a clear understanding with the client that the fees are earned fees and unrefundable." Tennessee Supreme Court Ethics Committee, Formal Ethics Op. 92-F-128(a) (1992).

Finally, the committee was requested to reconsider the guiding principles provided by Formal Ethics Opinion 92-F-128(a). Formal Ethics Opinion 92-F-128(b) summarizes the provisions of Formal Ethics Opinion 92-F-128(a), noting that the prior opinion permits non-refundable retainer fees in the three instances quoted above and considers such fees to be "earned" fees. Tennessee Supreme Court Ethics Committee, Formal Ethics Op. 92-F-128(b) (1993). The committee concludes by stating "[t]here are presently no compelling reasons why the traditional rule embodied in Formal Ethics Opinion 92-F-128(a) should be abandoned in favor of the old New York rule, providing that all advanced fees belong to the lawyer, now under attack; or, the potentially revised New York rule prohibiting non-refundable retainers." Tennessee Supreme Court Ethics Committee, Formal Ethics Op. 92-F-128(b) (1993).

After reviewing the law in Tennessee, we cannot say that there is authority which states that a non-refundable retainer fee is valid or invalid *per se*. In analyzing a fee agreement similar to the one at issue, the Tennessee Supreme Court in *Alexander v. Inman*, 974 S.W.2d 689 (Tenn. 1998), after determining the agreement in that case was not a contingent one, enumerated several factors to consider when determining whether the attorney in that case could enforce a fee agreement against a client. *Id*. at 693-94. Specifically, the court stated:

> [T]his Court has long held that an attorney is entitled to compensation in the amount agreed upon by contract, provided that the contract is fair at its inception and entered into in good faith. *Peoples Nat'l Bank of Washington v. King*, 697 S.W.2d 344, 346 (Tenn. 1985). In order to prove such good faith and fairness, an attorney seeking to enforce a contract for attorney's fees must show:
>
> > (1) the client fully understood the contract's meaning and effect,
> >
> > (2) the attorney and client shared the same understanding of the contract, and
> >
> > (3) the terms of the contract are just and reasonable.
>
> *Cooper & Keys*, 153 S.W. at 846 (citing *Planters' Bank of Tennessee v. Hornberger*, 44 Tenn. 531, 573 (1867)).

*Id*. at 694. Though the court utilized this test to determine whether an attorney may enforce a fee agreement against a client, we believe it is an appropriate test in the present case. If the agreement

is enforceable under the above factors, Stalls could not have a claim against Pounders or the law firm because she was not billed more than the non-refundable retainer fee.[6]

Analyzing the first two criteria together, Pounders and the law firm understood the agreement to mean that they would charge Stalls a $5,000.00 retainer fee at the outset that was not refundable. The question becomes whether Stalls fully understood the meaning of this provision and shared the same understanding of this provision as Pounders and the law firm. The handwritten letter from Stalls to Pounders establishes that Stalls understood she had "no right to ask" for a refund and Pounders and the law firm were "not required" to refund the retainer fee. Therefore, from the record it appears that Stalls fully understood the non-refundable retainer fee provision, and Pounders, the law firm, and Stalls shared the same understanding of the provision.

Now we must consider whether the record supports a determination that the non-refundable retainer fee provision of the contract is "just and reasonable." *Id*. To determine whether a fee is "reasonable," the Tennessee Supreme Court added the following:

> Pursuant to the fee agreement, the factors to be considered in determining the reasonableness of a fee are "the time and labor required, the novelty and difficulty of the questions involved, the skill required to perform the services properly, the amount involved and results obtained, and other relevant factors." *Connors v. Connors*, 594 S.W.2d 672, 676 (Tenn. 1980). Additional factors relevant to reasonableness of a fee include: the time limitations imposed by the circumstances, the fee customarily charged in the locality for similar legal services, and the experience, reputation, and ability of the lawyer performing the legal service. *Id*.

*Id*. at 695. We note that these factors reflect most of the factors listed in Disciplinary Rule 2-106 and Rule 1.5 of the Rules of Professional Conduct.

The trial court below granted summary judgment on the basis that Formal Ethics Opinion 92-F-128(a) permits non-refundable retainer fees and that the facts and circumstances of this case place it within the limited exceptions articulated in that opinion. Because we hold that the validity and enforceability of the non-refundable retainer fee provision are subject to the three part test of *Alexander v. Inman*, we remand this case for a consideration of the elements necessary to determine whether the non-refundable retainer fee provision is "just and reasonable."

---

[6]  *See supra* note 3 and accompanying text.

## Conclusion

For the reasons stated above, we remand this case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed equally to Appellant, Michelle Stalls, and her surety, and Appellees, Dorothy J. Pounders and the law firm of Pounders Coleman, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE