IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 20, 2006 Session

IN RE ESTATE OF EVA FRIEDMAN WEISBERGER

PHILIP J. COOPER
v.
ESTATE OF EVA FRIEDMAN WEISBERGER

An Appeal from the Probate Court for Shelby County
No. C-0005251     Robert S. Benham, Judge

No. W2005-01847-COA-R3-CV - Filed November 28, 2006

This is a petition for attorney's fees in probate.  The petitioner attorney was retained to represent the estate in the underlying probate action.   After his duties were essentially completed, the representatives of the estate hired new counsel for the estate.  The petitioner attorney then filed a petition for attorney's fees, asserting that there had been an oral contract for 3% of the estate's assets. The estate's representatives objected, contending that there had been no agreement on attorney's fees, and that the amount of the fee requested was excessive.  After a hearing, the trial court determined that the parties had entered into the agreement as asserted by the attorney, and that the fee agreement was reasonable at the time it was made.  Therefore, the trial court enforced the fee agreement and entered a judgment in favor of the petitioner.  The estate now appeals.  We affirm, concluding that the evidence does not preponderate against the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Edward T. Autry and Michael R. Parham, Memphis, Tennessee, for the appellant, Estate of Eva Friedman Weisberger.

Joe M. Duncan, Memphis, Tennessee, for the appellee, Philip J. Cooper.

**OPINION**

Eva Friedman Weisberger ("decedent") died on September 14, 2001, leaving a Last Will and Testament ("the will"). Her children, Irving Weisberger ("Weisberger") and Arlene Weisberger Kleiman ("Ms. Kleiman"), sought to probate her will. To that end, in December 2001, Weisberger, Ms. Kleiman, and Ms. Kleiman's husband, Alan Kleiman ("Mr. Kleiman"), an attorney, met with Petitioner/Appellee attorney Philip J. Cooper ("Cooper") to discuss retaining Cooper to administer the estate of the decedent.

The meeting lasted about an hour. During the meeting, the parties discussed the nature of the decedent's assets, valued at approximately $1 million, not including real estate. It is undisputed that, at that meeting, Weisberger and Ms. Kleiman agreed to retain Cooper to administer the estate of the decedent. However, the terms of Cooper's engagement were not put into a written agreement. The existence and terms of a fee agreement are at issue in this appeal. Cooper claims that he told Weisberger, Ms. Kleiman, and Mr. Kleiman in this meeting that his fee would be 3% of the probate estate, not including real estate.

Following this meeting, Cooper undertook to provide services on behalf of the estate. He drafted and filed a petition to probate the decedent's will. The will was admitted to probate, and Weisberger and Ms. Kleiman (collectively, "Administrators") were appointed as co-administrators of the estate. Cooper provided the services required to administer the estate, such as appearing in court, meeting with the Administrators, dealing with lease issues, and preparing the necessary documents.

The Administrators later hired a certified public accountant, Terry Polsgrove ("Polsgrove"), to prepare the tax documents for the estate, including the federal estate tax return. On Schedule J of the return, Polsgrove listed the attorney's fees paid on behalf of the estate as $30,100. In the course of preparing the tax return, Polsgrove met with Weisberger three times and reviewed the return with him each time. On the tax form, the attorney's fees could be characterized as either "estimated" or "agreed upon." Because Weisberger never told Polsgrove that he objected to the amount of attorney's fees listed on the return, Polsgrove prepared the return to reflect that the $30,100 in attorney's fees were "agreed upon." Weisberger signed the return prepared in this manner. Ms. Kleiman also signed the return, but did so without having reviewed the details of the return with Polsgrove. The estate tax return was filed on June 14, 2002.

Seven months later, on February 24, 2003, Cooper wrote a letter to the Administrators requesting payment of his fee of $30,000, which was 3% of the value of the estate's assets. On March 13, 2003, Weisberger sent Cooper a letter in response. In the letter, Weisberger offered to make an initial payment of $5,000, and told Cooper that he did not want to pay his full fee until the legal work had been completed.[1]

---

[1]No monies were paid to Cooper at that time.

In April 2003, the Administrators hired another attorney to administer the estate matter. Subsequently, they filed a petition in the trial court to substitute the new attorney for Cooper. Cooper was not told the reasons why he was replaced.

On April 23, 2003, Cooper filed a petition in the probate court for his fees. In his petition, he asked the probate court to order the Administrators to pay him $30,000 in fees, which represented the 3% fee upon which he contended the parties agreed. In response, the Administrators asserted that the parties had not entered into a fee agreement, that Cooper had expended neither the time nor the labor necessary to justify a fee of $30,000, and that such a fee was not reasonable under the circumstances.

A trial was conducted in the matter on July 18, 2005. Cooper testified on his own behalf. At the outset, he outlined his background and practices. Cooper said that he has been practicing law for forty-four years, and that 95% of his practice was in probate. He said that his normal practice in representing an estate was to charge 3% of the assets that pass through the probate estate. He testified that this fee arrangement was originally recommended to him by long-time Probate Court Clerk Bob Dunavant, and that the rate was within the parameters set forth in the guidelines published by the probate court and was routinely approved by the probate court judges.

Cooper then testified about his dealings with the parties in this matter. He said that Mr. Kleiman contacted him in December 2001 about representing the decedent's estate. When the parties met, they discussed what generally would be involved in the case, and he was told that the decedent had about $1,000,000 in personal assets and about $500,000 worth of real estate. Cooper told the decedent's family that he would represent the estate for 3% of the probatable assets, his standard rate. He then left the room for about ten to fifteen minutes so that they could discuss the matter. When he returned, the family gave Cooper the decedent's will and agreed to retain him to represent the estate, with no further discussion of his fee arrangement.

Cooper testified about the work he performed for the estate, but said that he did not keep a record of his time because he had agreed to the fee in exchange for doing whatever needed to be done. Cooper stated that he prepared the petition and order, appeared in probate court and had the Administrators appointed as administrators, assisted in inventorying assets and valuing assets for tax purposes, obtained a tax ID number, appeared in court to obtain an extension of time, prepared receipts and waivers, and filed a claim against the estate on behalf of Weisberger. He said that he was prepared to do anything else that was either necessary or requested by the Administrators. Cooper estimated that the tasks he performed for the estate took a little more than seven hours.

Cooper testified that he was willing and available to prepare the tax returns for the estate, but instead Weisberger asked Polsgrove to prepare them, because Polsgrove had done accounting for the family for a long time. Cooper said that he never spoke to Polsgrove or anyone in Polsgrove's office to tell them the amount of his attorney's fees. Nevertheless, the Administrators signed the return reflecting that the attorney's fees would be $30,100, and that the executor's fee would also be $30,100. Cooper testified that he "had always talked to Mr. Weisberger about $30,000." Cooper

stated that, because the estate claimed this amount in attorney's fees, the estate received a deduction of $16,000 from its tax liability.

Cooper testified that when he sent the Administrators the letter requesting his $30,000 fee, they did not respond by telling him that they would not pay his full fee, and likewise they did not indicate that it was excessive. Cooper said that he intended to enforce the contract for his fee, because with an agreed fee such as this, he bore the risk that unanticipated problems would arise and that more work would have been required of him. He noted that he would not have asked for additional fees had the case turned out to be more complicated, commenting "you can't anticipate how convoluted an estate might get." He added that, "[i]n this case, it didn't get that way."

William Walsh ("Walsh"), an attorney who had practiced for fifty-five years, testified as an expert on behalf of Cooper. He stated that, in probate matters, he represents estates for an amount within the probate court guidelines, and usually agrees to a dollar amount, if possible. Walsh stated that the $30,000 fee charged by Cooper, if agreed upon, was fair and reasonable and consistent with the probate court guidelines.

The Administrators testified as well. Weisberger, who was sixty-one years old at the time of trial, testified that he was not employed but manages his own investments and lives off of the income from them.[2] He graduated from college with a degree in business administration and has a master's degree in marketing. He lived with the decedent for the entirety of his life until the time of her death.

Weisberger testified that, at his initial meeting with Cooper, also attended by his sister and her husband, Cooper talked in general about estate business. Weisberger told Cooper that the estate was worth about $1 million, and he said that Cooper told the Administrators that he would charge the "the going rate" for his services. Weisberger maintained that Cooper did not state an exact figure or percentage.

Weisberger testified about the federal tax return, asserting that he was unaware of where Polsgrove obtained the $30,100 attorney's fee amount. However, in his deposition, Weisberger testified that Polsgrove had gotten the figure from Cooper. Weisberger signed the tax return on the date it was due, and he said that he did not go over every item with Polsgrove because he trusted him. Weisberger said that he did not file an amended federal tax return to change the fee agreed upon.

Arlene Kleiman also testified at trial. She graduated from college with a degree in pre-med psychology, is the director of Mid-South Chess Company, and owns her own business. In the initial meeting with Cooper, Ms. Kleiman testified, Cooper did not say what his fee would be, but only that it would be within the probate court guidelines and that it would be fair. She maintained that Cooper did not mention anything about a $30,000 fee. Ms. Kleiman said that, at the time of the meeting, she

---

[2]Weisberger stated that, after college, he worked one year in retail sales.

was still upset about the death of her mother, with whom she was very close. She said that her involvement in the administration of the estate was minimal, and Weisberger handled the estate matters. She signed the federal tax return at the last hour, and did not go over the details with anyone.

Polsgrove also testified at trial. Polsgrove said that he had included the $30,100 attorney's fee in the federal tax return based on a telephone discussion he had with Cooper, in which Cooper told him that his fee would be 3% of the estate's assets. Polsgrove said that he met with Weisberger on June 3 and June 7, 2002 regarding the return, and that Weisberger never objected to the attorney's fee amount. Polsgrove stated, "I indicated to [Weisberger] the amount of the fee and he did not disagree with it . . . ." For this reason, on the tax form, Polsgrove struck "estimated" and left "agreed upon" beside the fee amount. On June 14, 2002, before the return was filed, Polsgrove met with Weisberger for two hours explaining the details of the return, and Weisberger made no objection to the attorney's fee stated. He did not review the details of the return with Ms. Kleiman. Polsgrove stated that, as a result of claiming the attorney's fee, the estate received a total of about $15,000 to $16,000 in deductions.

John Smith ("Smith"), an attorney, testified as an expert on behalf of the Administrators. Smith said that from his review of the case, at most he could have performed twenty-five (25) hours of work on it. He said that he charges an hourly rate to probate estates, had never represented an estate on a percentage-of-assets basis, and was not aware of any other attorney whose standard practice was to charge based on a percentage. Reviewing the factors of DR 2-106, Smith concluded that the $30,000 fee charged by Cooper was not reasonable in light of the time spent on the case. Smith conceded, however, that Cooper's fee was within the local probate court guidelines, and was actually less than the maximum allowable under those guidelines.

On July 19, 2005, the trial court issued an oral ruling in favor of Cooper. The trial court found that the parties had entered into a fee agreement under which the Administrators agreed to pay Cooper 3% of estate's assets in exchange for his services. The trial court commented that, in hindsight, $30,000 was "grossly excessive for the services rendered in this matter." However, the fee agreed upon was reasonable at the time the parties entered into the agreement because, at that time, the extent of the services that would be required of Cooper was unknown. The trial court reasoned:

> Now, if we were operating in hindsight, which we are not, 30,000 dollars is grossly excessive for the services rendered in this matter. And the question in this Court's mind is to that effect, but that's not what the Court can look at.
> What the Court has to look at is what the status was in December of 2001, when the parties were discussing the fees. And at that time, Mr. Cooper told [the Administrators and Mr. Kleiman] that his fee would be 3 percent and that would include anything that could come up.
> It was a two-way sword at that point in time. There could have been a lot of litigation. Mr. Cooper could have been charged with filing all those tax returns.

Subsequently the parties did not have him do that. He didn't know what type of Pandora's Box he was getting into, and the parties didn't question it.

The parties even took credit for it on later tax returns. The parties had the availability of separate counsel. And while Ms. Kleiman was very distraught, Mr. Weisberger not only has a bachelor's degree, but he has a master's degree. And Mr. Weisberger, while he may have only worked one year, the Court finds to be sophisticated in money matters by his own testimony.

\*\*\*

There are many factors in the hindsight of the setting of fees. And we have many cases that say the Courts [sic] considers the amount and character of the services rendered, the complexity of the estate, time and effort involved, character, the Court – litigation, the amount of money or the value of the property involved, the professional skill and experience required and the experience and standing of the attorneys.

The cases are each – on all these points. These are hindsight cases. That's not what we had here. What we have here is on the front end Pandora's Box is sitting there. None of the parties know what is going to have to be done, and the parties, the Court finds, reached an agreement. The agreement being 3 percent.

The Court does not find that, at that point in time, the 3 percent was unreasonable. There are — for many years, I should say, fees in probate were a percentage of the assets. Then the Courts told us that's not the way to do it.

\*\*\*

The Court feels that, at the time it was entered into, [the contract] was reasonable. Hence, the Court is going to award a judgment to Mr. Cooper for the 30,000 dollars. I will not award any interest.

On July 26, 2005, the trial court entered an order consistent with its oral ruling, holding that Cooper had carried his burden of proof and was entitled to a judgment of $30,000. From that order, the Administrators now appeal.

On appeal, the Administrators argue that the trial court erred in (1) failing to grant the estate a directed verdict at the close of Cooper's proof,[3] (2) finding that the parties had entered into an agreement, (3) determining that the parties' agreement was entered into in good faith and was fair and reasonable at the time the agreement was formed, (4) failing to hold that Cooper was not entitled to the fee because it was clearly excessive under DR 2-106 (now Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5 ("RPC 1.5")), and (5) holding that the only inquiries to be made were whether a valid contract existed and whether the contract was reasonable when it was formed. The Administrators emphasize that the trial court erred in approving Cooper's fee without engaging in an analysis of the appropriate factors set out in *Connors v. Connors*, 594 S.W.2d 672 (Tenn.

---

[3] The Administrators argue that the trial court erred in failing to enter a directed verdict. However, because this was a bench trial, we consider their contention to be that the trial court erred in failing to grant a judgment in their favor at the close of the plaintiff's proof.

1980) and DR 2-106, particularly after commenting that the fee was "clearly excessive" in light of the hours worked. In response, Cooper argues that, because he was terminated without cause, he is entitled to recover the amount agreed upon in his contract, so long as the contract was fair and reasonable at the time the parties entered into it.

We review the trial court's findings of fact *de novo* on the record, presuming those findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); ***Alexander v. Inman***, 974 S.W.2d 689, 692 (Tenn. 1998). We review questions of law *de novo*, with no presumption of correctness. T.R.A.P. 13(d); ***Alexander***, 974 S.W.2d at 692. The trial court's credibility determinations must be upheld on appeal unless there is clear and convincing evidence to the contrary. ***Wells v. Tenn. Bd. of Regents***, 9 S.W.3d 779, 783 (Tenn. 1999).

We first address the Administrators' challenge to the trial court's factual finding that a contract existed, under which the Administrators agreed to pay Cooper 3% of the value of the estate's assets. Cooper testified that the parties had such an agreement, and the estate's administrators denied it. To some extent, the trial court's conclusion hinged on its credibility determination in favor of Cooper. Of course, we are required on appeal to defer to the trial court's assessment of the credibility of the witnesses. ***Id.*** In addition, however, Cooper's assertion on the alleged fee agreement is corroborated by other evidence. The federal estate tax return reflected a deduction of $30,100 in administrative expense for attorney's fees that were "agreed upon." Both Administrators signed this return under penalty of perjury. Polsgrove testified that he mentioned the amount of Cooper's fee to Weisberger, and Weisberger did not disagree with it. Moreover, after Cooper wrote the letter to the Administrators requesting his fee, in their response, the Administrators did not challenge the amount requested. Under all of these circumstances, giving due deference to the trial court's credibility determinations, we find that the evidence does not preponderate against the trial court's finding that the parties entered into a fee agreement under which the Administrators agreed to pay Cooper 3% of the value of the assets of the estate for his services.

We must now consider the issue of whether Cooper is entitled to the contracted fee. Cooper was discharged by the Administrators after most of the legal work for the estate had been completed. For purposes of this appeal, the Administrators concede that the discharge was "without cause." When an attorney is discharged without cause, he may collect his fee either on the basis of *quantum meruit* or based on contract, whichever is greater. ***See Adams v. Mellen***, 618 S.W.2d 485, 488 (Tenn. Ct. App. 1981); ***see also Sowell v. Christy***, No. M2004-02186-COA-R3-CV, 2006 WL 568238, at *2 (Tenn. Ct. App. Mar. 8, 2006). In order to recover on the contract, however, the fee contract must be enforceable.

The Tennessee Supreme Court "has long held that an attorney is entitled to compensation in the amount agreed upon by contract, provided that the contract is fair at its inception and entered into in good faith." ***Alexander***, 974 S.W.2d at 694 (citing ***Peoples Nat'l Bank of Wash. v. King***, 697 S.W.2d 344, 346 (Tenn. 1985)). To prove the requisite "good faith and fairness," the attorney seeking to enforce the fee agreement must show:

> (1) the client fully understood the contract's meaning and effect,
>
> (2) the attorney and client shared the same understanding of the contract, and
>
> (3) the terms of the contract are just and reasonable

*Id.* (citing ***Cooper & Keys v. Bell***, 153 S.W. 844, 846 (Tenn. 1913)).  The first two factors, that the client fully understood the contract and that the attorney and client shared the same understanding of the contract, reflect "the obligation of an attorney to act in the utmost good faith in any transaction with his or her client.  This principle is long-standing." ***Silva v. Buckley***, No. M2002-00045-COA-R3-CV, 2003 WL 23099681, at \*7 (Tenn. Ct. App. Dec. 31, 2003) (Cottrell, J., dissenting).  Placing these burdens on the attorney acknowledges general contract law, "but places it in the context of the fiduciary obligation of the attorney, whose duty it is to ensure that such a mutual understanding exists." *Id.* at \*7.

In this case, the trial court held that, at the parties' initial meeting, "Mr. Cooper told [the Administrators and Mr. Kleiman] that his fee would be 3 percent and that would include anything that could come up."  The Administrators argue that the preponderance of the evidence does not support this finding, because Cooper only met with them a short time, and he discussed only "estate business."  They claim that the trial court ignored their testimony that Cooper told them that he would charge them the "going rate" that was "within the court's guidelines," without specifying a percentage.  Furthermore, they argue, they were in a disproportionate bargaining position, because Cooper was an expert in probate matters and they were not.

We disagree.  The trial court did not ignore the Administrators' testimony regarding their understanding of the fee agreement; rather, the trial court did not find the testimony credible. Such credibility determinations are uniquely within the province of the trial court and will not be reversed absent clear and convincing evidence to the contrary.  Furthermore, the Administrators' signed tax return reflecting the $30,100 attorney's fee and their failure to object to Cooper's letter requesting payment of the $30,000 fee clearly indicate that the Administrators understood that Cooper intended to charge the estate 3% of the value of its assets for his services.  As the trial court noted, the Administrators are well educated and Mr. Kleiman, present at the initial meeting, is an attorney. Under these circumstances, the evidence does not preponderate against the trial court's conclusion that the Administrators understood the terms of the fee agreement, and that they shared the same understanding as Cooper.

Under the third criterion for establishing good faith and fairness, Cooper was required to show that the terms of the contract were just and reasonable at the time the contract was made.  The Administrators argue that it was improper for the trial court to enforce the terms of the contract without consideration of whether the $30,000 fee was reasonable in light of the factors in ***Connors*** or in DR 2-106/RPC 1.5.[4]  The trial court correctly found that the fee ultimately charged was clearly

---

[4] The ***Connors*** factors include: the time devoted to performing the legal service; the time limitations imposed by the circumstances; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service

(continued...)

excessive, the Administrators argue, because the evidence showed that Cooper spent a little over seven hours on the case, which would make his rate approximately $4,138 per hour, a rate that is clearly excessive. Even if Cooper had spent twenty-five hours on the case, the maximum hours estimated by the Administrators' expert witness, John Smith, his rate would have been $1,200 per hour, also clearly excessive.

In support, the Administrators rely on the Supreme Court decision in *Alexander v. Inman*, 974 S.W.2d 689 (Tenn. 1998). In *Alexander*, the Court scrutinized a written fee agreement in a divorce case in which the client agreed to pay her attorneys "a reasonable amount taking into consideration [certain *Connors* factors]. Said final fee shall not exceed 15% of the total sum . . . awarded to Client." *Alexander*, 974 S.W.2d at 691. The agreement was deemed enforceable so long as it was entered into in good faith at the time the contract was formed. *Id.* at 693-94. The Court stressed that "[t]he relationship of attorney and client is 'extremely delicate and fiduciary'; therefore,

---

[4](...continued)
properly; the fee customarily charged in the locality for similar services; the amount involved and the results obtained; and the experience, reputation, and ability of the lawyer performing the legal service. *Connors*, 594 S.W.2d at 676. Supreme Court Rule 1.5 lists similar, but not identical, criteria:

(a) A lawyer's fee and charges for expenses shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) Whether the fee is fixed or contingent;

(9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) Whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, RPC 1.5 (2005).

attorneys must deal with their clients in utmost good faith." ***Alexander***, 974 S.W.2d at 693-94. Because the contract, on its face, required a "reasonable" fee with consideration of certain ***Connors*** factors, the ***Alexander*** Court applied the ***Connors*** factors and found that the fee sought by the attorney was reasonable, in part because the fee was capped at 15% of the amount recovered.

The Administrators also cite ***White v. McBride***, 937 S.W.2d 796 (Tenn. 1996). In ***White***, the Court addressed whether an attorney could recover on a contract in which he agreed to represent an estate for a $2,500 retainer plus "one-third of gross recovery above and in excess of retainer." ***White***, 937 S.W.2d at 797. The circumstances of that case were unusual. The decedent and her husband were estranged at the time of the decedent's death. During the decedent's illness preceding her death, some of her relatives took an inventory of the assets in her personal safe, which included a holographic will that made no provision for the estranged husband. The relatives made a list of the assets and gave the list to the husband and his attorney, White. The relatives then took the assets and the will with them to their home in Texas. The estranged husband hired White to force the probate of the decedent's estate in Shelby County so as to recover the one-third elective share to which he was entitled. ***Id.*** at 797. Before the decedent's estate could be settled, the estranged husband died. After that, the beneficiary of the husband's estate discharged White and hired new counsel. White thereafter filed a claim against the decedent's estate for $108,291, which was approximately one-third of $349,000, the husband's elective share of the estate.

The trial court in ***White*** determined that the fee requested was clearly excessive. Nevertheless, it allowed White to recover his fees on a *quantum meruit* basis, multiplying the 114 hours he spent on the case by $150 per hour. The court of appeals affirmed. The Supreme Court accepted certiorari to determine "whether the fee contract violated DR 2-106." ***Id.*** at 800. White argued that the one-third fee was reasonable because, at the time he entered into the fee agreement, (1) the size of the decedent's estate was unknown and he bore the risk that it would be smaller; and (2) there was a substantial risk of non-recovery because the decedent's relatives had taken the decedent's assets to Texas. The Court rejected White's claims. It noted first that, at the time of the contract, White had a copy of the inventory of the decedent's assets and knew that he was dealing with a sizable estate. Furthermore, the estranged husband's entitlement to his one-third elective share of those assets was beyond dispute. The Court acknowledged that there was a risk of non-recovery of the assets, but observed that, at the time White entered into the fee agreement with the estranged husband, White was unaware of this risk because he did not know at that time that the assets had been taken to Texas. Having rejected White's justifications for the contingency fee contract, the Court determined that the contract was unreasonable considering the other factors listed in DR 2-106. The Court found that the case was not complicated or novel, White was not a probate specialist, he was not prohibited from taking other employment, and the fee requested would have resulted in a rate of $950 per hour, which was grossly in excess of "the fee customarily charged in the locality for similar legal services." ***Id.*** at 801 (quoting DR 2-106(B)(3)).

As noted in ***Alexander***, a contract for attorney's fee is generally enforceable so long as the contract was understood by the parties and the attorney entered into the contract in good faith. In determining whether the terms of a contract are fair and reasonable, the Court in ***White*** emphasized

-10-

that the relevant inquiry focused on the facts as they existed at the time the contract was made and what the parties knew at the time of the contract. *Id.* Once it determined that the risks at the time the contract was made were insufficient to justify the one-third fee, the *White* Court then went on to apply the factors in DR 2-106, and ultimately concluded that the fee was not justified. *Id.*

In this case, the trial court rejected the Administrators' analysis, as relying on a "hindsight" view of the situation; the trial court rightly focused on the facts and circumstances as they existed at the time the parties entered into the fee agreement. The trial court found it significant that, at the time the contract with made, Cooper agreed to render services on "anything that would come up." The extent of such services was unknown when the parties were discussing Cooper's fees, and the trial court characterized the fee agreement as a "two-way sword" that could have benefitted either party, depending on the extent of the services required. The trial court opined that "[t]here could have been a lot of litigation. Mr. Cooper could have been charged with filing all those tax returns. Subsequently the parties did not have him do that. He didn't know what type of Pandora's Box he was getting into, and the parties didn't even question it." Thus, the trial court found that, at the time the contract was entered into, the 3% fee was reasonable.

We agree with the trial court's analysis. The contract at issue was not a contingency fee contract, because Cooper was certain to be paid, but the amount of his fee was uncertain at the outset because the ultimate value of the estate's assets were unknown. *See Alexander*, 974 S.W.2d at 693. The agreement was more of a flat-fee arrangement in which the percentage was certain, the value of the assets was believed to be approximately $1 million, but the amount of work that would be required of Cooper was unknown at the time the contract was signed. By agreeing to charge a small percentage of the estate's assets at the outset of the case, Cooper bore the risk of these unforeseen circumstances. As it turned out, however, less work was required of him. However, had a great deal of work been required of Cooper, he likewise would be bound by the bargain he struck.

The evidence at trial showed that the 3% fee charged by Cooper was generally reasonable at the time the contract was made. Cooper, a lawyer for forty-four years and an expert in probate matters, testified that he charges 3% of the probatable assets for all of his probate cases based on the probate court guidelines. The reasonableness of the percentage was corroborated by Cooper's expert witness, apparently credited by the trial court, and the guidelines themselves.[5]

---

[5]The Probate Court Guidelines provide that a court may award a percentage of the estate as attorney's fees according to the following scale:

| VALUE OF ESTATE | FEE |
| --- | --- |
| First $ 100,000 | 3% to 5% |
| Next $ 900,000 | 2% to 4% |
| Over $1,000,000 | 1% to 3% |

These guidelines reflect what may be considered to be reasonable but are not binding on the Court, the parties, or the attorneys. Fees should be reasonable and otherwise in accordance with Rule 1.5 of the Tennessee Rules of Professional Conduct as set forth in Tennessee Supreme Court Rule 8.

Probate Court Rule XIII.A.5 (2005). Though the rule was amended effective March 2005, this portion of the rule is
(continued...)

Under all of these circumstances, we must conclude that the evidence does not preponderate against the trial court's decision to enforce the fee agreement between the parties.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Estate of Eva Friedman Weisberger, and its surety, for which execution may issue, if necessary.

 

 

_____

HOLLY M. KIRBY, JUDGE

---

[5](...continued)
substantially the same as it was prior to the amendment.